# Van Eman *v.* Fidelity & Casualty Company of New York, Appellant.

*Insurance—Accident insurance—Evidence—Res gestæ—Declarations.*

In an action to recover death benefits on a policy of accident insurance, a judgment for the plaintiff will not be reversed because the deceased's wife was permitted to testify as to certain declarations made by the deceased several hours after an accident referred to by him in his declarations, and of which no one else had any knowledge, where a physician of the defendant company subsequently testifies that the deceased made substantially the same statements to him.

*Insurance—Accident insurance—Proof of death.*

In an action upon a policy of accident insurance, where it appears that the policy provides that immediate written notice must be given of an accident, with particulars thereof, and that affirmative proof of death must be furnished within two months from the time of death, notice of an accident and of death is sufficient, where it appears that nine days after the accident the general agent of the company filled up one of the company's accident blanks and mailed it to the company's main office; that four days thereafter the company wrote to the agent suggesting that the insured should be examined by the company's surgeon; that when the insured died a month afterwards the agent on the day after the death telegraphed the company of the death; that the company thereupon instructed its surgeon to attend the autopsy, and that fifteen days after the death the attorney for the widow notified the company of the death and the circumstances under which it occurred.

Argued Oct. 30, 1901. Appeal, No. 56, Oct. T., 1901, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1899, No. 355, on verdict for plaintiff in case of Millie W. Van Eman v. Fidelity & Casualty Company of New York. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Assumpsit on a policy of accident insurance. Before EVANS, J.

The facts are stated in the opinion of the Supreme Court.

When the plaintiff was on the stand the following offer was made :

Counsel for plaintiff now proposes to prove by the witness on the stand, that upon Friday, the day of the accident, upon

Mr. Van Eman's return home and in connection with his complaint of pain, he told the witness on the stand, where, when and how he had sustained the injury to the wrist. Objected to as irrelevant and immaterial and incompetent. Objection overruled. To which ruling, the counsel for defendant requests an exception. Exception allowed and bill sealed. [4]

Under objection, the witness testified as follows:

"Q. When you first saw your husband, Friday, when he returned home, did he state to you, when and where and how the accident happened? A. He did. Q. What time in the afternoon was it? A. It was between four and five o'clock Friday. Q. What did he say to you? A. He told me, on his way home, he felt very much fatigued, and fell asleep with his arm resting on the arm of the chair and supporting his head, and he did not know anything further until his arm was knocked out from in under his head, and he could not raise it, and when he wanted to pick it up, he had to do it with the other hand; he had no power over it. Q. Did he speak of its striking . . . . A. He said the jar of the car had knocked his arm, he supposed, against the arm of the seat. Q. Which arm was it? A. His left arm. "

The court: "Q. Did he say where this accident happened? A. On the train. Q. Well, which train? A. On a passenger train on the Lake Erie Railroad."

The court admitted under objection and exception the correspondence between the company and its agent referred to in the opinion of the Supreme Court. [5]

The court also admitted under objection and exception the letter of W. O. McNary, referred to in the opinion of the Supreme Court. [6]

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $11,414.95. Defendant appealed.

*Errors assigned* among others were (1) above instruction, quoting it; (4–6) rulings on evidence, quoting the bill of exceptions.

*Homer L. Castle* with him *William A. Stone, Stephen Stone* and *W. E. Lineaweaver*, for appellant.—Those only are res

gestæ which are so intimately associated with the main act as to be the unconsidered declarations growing out of the instant impressions of the act: Ogden v. Pennsylvania R. R. Co., 23 W. N. C. 191; Coll v. Easton Transit Co., 180 Pa. 618; Vicksburg & Meridian R. R. Co. v. O'Brien, 119 U. S. 99; Carnes v. Iowa State Travelingmen's Assn., 106 Iowa, 281.

Plaintiff did not comply with the terms of the policy calling for notice and proof of death: Trask v. State Fire & Marine Ins. Co., 29 Pa. 198; LaFayette Gould v. Dwelling House Ins. Co., 134 Pa. 570.

*Edwin W. Smith,* with him *W. O. McNary* and *Knox & Reed,* for appellee, cited as to the presumption of accident: Peck v. Equitable Accident Assn., 52 Hun, 255; Bacon v. U. S. Mut. Accident Assn., 44 Hun, 599; Travellers' Ins. Co. v. McConkey, 127 U. S. 661.

Cited as to the proofs of death: Hower v. Susquehanna Mut. Fire Ins. Co., 9 Pa. Superior Ct. 153; Todd v. Quaker City Mut Fire Ins. Co., 9 Pa. Superior Ct. 371; Thierolf v. Universal Fire Ins. Co., 110 Pa. 41; Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149; Welsh v. London Assurance Co., 151 Pa. 607; Roe v. Dwelling House Ins. Co., 149 Pa. 94; Lycoming County Mut. Ins. Co. v. Schollenberger, 44 Pa. 259; Home Ins. & Banking Co. v. Myer, 93 Ill. 271; Susquehanna Mut. Fire Ins. Co. v. Staats, 102 Pa. 529; Franklin Fire Ins. Co. v. Updegraff, 43 Pa. 350; Lycoming County Mutual Ins. Co. v. Schollenberger, 44 Pa. 259.

OPINION BY MR. JUSTICE BROWN, February 24, 1902:

The Fidelity and Casualty Company of New York issued an accident insurance policy to David W. Van Eman, the beneficiary, if he should die from injuries resulting from accident, being his wife, Millie W. Van Eman. The amount to be paid to her was $5,000; but, if death resulted from injuries received by the insured while "riding as a passenger in or on a public conveyance propelled by steam, electricity or cable, and provided by a common carrier for passenger service," the sum to be paid was $10,000. She brought this suit, and, on the trial, proved that the insured, on May 27, 1898, when the policy was in full force and he was in good health, had left Gallitin, on

the Pittsburg and Lake Erie Railroad, for Pittsburg, shortly before noon, and ought to have arrived in that city at a little after one o'clock. She testified that he reached home between four and five o'clock that afternoon and complained to her of an injury to his left wrist and of the great pain it gave him; that he told her, as soon as he reached home, he had fallen asleep in the car, with his head resting on his left hand, and a jar of the train had knocked his arm from under his head, and, when he awoke, he could not raise it up; that he had no power over the left arm and picked it up with his right hand, and that he supposed the jar of the car had knocked his arm against the arm of the seat. There was proof that he suffered great pain and that his condition became most distressing. He died July 10, and though, as usual, the doctors differed as to the cause of his death, according to the testimony of the three called by the plaintiff, the jury were fully justified in finding that there had been external and violent injury to the wrist, and that death had resulted from it. We have no concern with the conflicting theories of these physicians and will not consider them. It was for the jury to pass upon them. They did so by finding that the cause of the insured's death was an injury to the wrist, and it is for us simply to pass upon two questions raised on this appeal; first, was it competent for Mrs. Van Eman to testify as to what her husband told her as to the time, place and manner of the accident? and, secondly, did the insurance company receive affirmative proof of death, in accordance with one of the conditions of the policy?

It may be that the statement of the deceased, made to his wife several hours after he had left the train, ought not to have been received as part of the res gestæ, and we do not understand that it was offered as such. When the husband reached his home with his aching arm, the one person for whom he first looked and to whom he would first tell the simple truth was his wife. He might have said nothing to any passenger on the train, nor to any friend or passerby on his way home; but there he would tell what had happened, and, first of all, to the one to whom he would naturally turn for attention and comfort. Human experience teaches us that he would speak the truth to her, and that he would tell her just what had happened to him, as he would have told it, if he had spoken, to those about him

when he awoke in the car with his helpless arm at his side. At no time could he have told just how he had been injured, for he was asleep when his arm was knocked from under his head; but he gave a reasonable theory of how he had been hurt. Any statement he might have made at the instant he was hurt, as to the cause of the injury, would have been evidence as part of the res gestæ. The law presumes that, having so spoken on the instant, without premeditation, and as soon as he found he had been injured, he would speak the truth; but, whether this presumption should extend to what the deceased told his wife, and she ought to be allowed to repeat it as part of the res gestæ, we need not decide, for, even if she ought not to have been allowed to tell it, this judgment will not be reversed because she did. The defendant company itself, by its own witness, Dr. Johnson, proved just what she had testified to under objection. That witness had not been called to contradict her, but, on the contrary, his examination in chief was as follows: " Q. Did Mr. Van Eman make some statements to you as to what he did? A. He did. Q. Well, what were they? A. I asked Mr. Van Eman how the pain was brought on that he complained of, and he told me at great length, as far as he knew, what brought it on. He said he was riding at the end of the seat, near the aisle, and there was some delay in the running of the train, and he fell asleep with the arm resting along the iron arm of the car seat, and something startled him and waked him, and when he awoke he found his arm resting upon the cushion, it was a little numb, he picked it up with his right arm and there was a numb feeling, and late in the afternoon a pain, which increased so that by the next day it was a very decided pain, a very severe and excruciating pain. He said to me, ' That is as near as I can tell, what brought on this condition which you see here.' " Before Johnson testified, Mrs. Van Eman's testimony was: " Q. What did he say to you? A. He told me, on his way home he felt very much fatigued, and fell asleep with his arm resting on the arm of the chair and supporting his head, and he didn't know anything further until his arm was knocked out from in under his head and he couldn't raise it, and when he went to pick it up he had to do it with the other hand; he had no power over it." Contrasting the testimony of these two

witnesses, there is no contradiction.  What Johnson testified to was for all purposes, and through him the defendant proved that the accident had happened on the train just as Mrs. Van Eman stated her husband had told her.  We have, then, before us, distinctly proved by the defendant itself, the very statement made the subject of the fourth specification of error, which is not sustained.

Failure to comply with the eleventh condition of the policy is assigned as a reason why the plaintiff cannot recover.  That condition is : " Immediate written notice must be given the company at New York city of any accident and injury for which a claim is to be made, with full particulars thereof, and full name and address of the assured.  Affirmative proof of death or loss of limb, or of sight, or of duration of disability, must also be furnished to the company within two months from the time of death, or of loss of limb or of sight, or of the termination of disability."  On June 6, 1898, J. H. Scott, the general agent of the company, who saw Van Eman on June 1, filled up one of the company's accident blanks and mailed it to the main office in New York city.  The receipt of the same was acknowledged by a letter dated June 10, in which the company suggested to Scott that its surgeon should examine the insured.  The accident blank, so filled up and sent to the company, contained all the information required by the first clause of the eleventh section of the policy.  Acting upon the suggestion in the letter of June 10, from the home office, Scott had Dr. Johnson, the company's surgeon, call upon and examine Van Eman, and the doctor saw him twice during his sickness.  Scott had notified the home office that he would have Dr. Johnson do so.  There was, therefore, full compliance as to furnishing immediate written notice to the company at New York city of the accident and injury for which a claim might be made.  On July 11, the day after Van Eman's death, Scott notified the home office by telegram, of his death ; that the funeral would be held on the following Tuesday, and that, as an autopsy had been advised, he had instructed Dr. Johnson to take part in it.  In response to this telegram, he was instructed from the home office that the company's surgeon should take part in the autopsy, and that it would bear its proportion of the expense.  On July 26, W. O. McNary noti-

fied the company, by letter directed to its home office, that Van Eman had died from the effect of an injury sustained by riding on a passenger coach of the Pittsburg & Lake Erie Railroad, on May 27, 1898, and that the widow, Millie W. Van Eman, as the beneficiary named in the policy, made claim for $10,000. The company now stands upon the strict terms of the condition referred to, that affirmative proof of death must be furnished to it. The affirmative proof required is not proof of death resulting from a cause covered by the policy, but simply " proof of death " and the presumption certainly would be that proof of death sent by the beneficiary, and received by the company, was of death covered by the policy. The condition does not provide that the proof is to be in writing, nor by whom it is to be furnished, but the evidence is that such proof, in writing, did reach the company, which acted upon it by having its own surgeon take part in the post mortem examination. Millie W. Van Eman, the beneficiary, through her attorney, W. O. McNary, furnished it, but the company, before receiving this proof, had acted upon what had been furnished to it by its own agent, and nothing more was required of the appellee. In such a case the law requires nothing vain or useless: Roe v. Dwelling House Insurance Company, 149 Pa. 94. The appellant's defense, that it did not receive affirmative proof of the insured's death, is without merit, and the judgment against it is affirmed.