Bracken *v.* Bethlehem Steel Company, Appellant.

252

Argued April 16, 1934.

Before Trex-
ler, P. J., Keller, Stadtfeld, Parker and James, JJ.

*Francis A. Dunn,* for appellant.

*Peter P. Jurchak,* for appellee.

OPINION BY JAMES, J., December 17, 1934:

Bertha Bracken, widow of Harry C. Bracken, filed her claim for compensation against the Bethlehem Steel Co., his employer. The referee disallowed the

claim but upon appeal was reversed by the compensation board with directions to make further investigation. After further testimony was taken, the referee awarded compensation which award was affirmed by the board and by the court of common pleas.

Harry C. Bracken was employed at defendant's plant as a screen-man at a place where he worked alone. His duties as a screen-man were confined to operating levers of a coke chute at the bottom of which on each side was a trap door operated by a lever. The lever was about two and a half feet long with a one foot handle, which when pulled allowed the coke to come down into the bins.

On the morning of April 23, 1930, in his usual good health, he left for his work accompanied by his son, William. At about 3:15 P. M. on his way from his work he punched the time clock at the office or gate, where he met his son. They left the plant together to board the street car several hundred yards from the gate. After they boarded the street car, decedent complained to his son of pain on the left side of his back and that he had hurt himself by bumping his back against the gate-rest while pulling the lever. Not being able to walk from the end of the street car line to his home, decedent stopped at the home of his sister-in-law, Mrs. Rankin, to whom he told the story of the accident and indicated on his back where he received the injury, and she testified that she could feel a big lump and that on the following day at the home of the deceased she looked at his back and saw the lump. Defendant's son testified that he saw a lump on the left side of his back above the hip on the evening of the alleged accident. Decedent's widow testified that when he arrived home, the deceased appeared to be physically ill; she examined him and found a lump described as "a pretty good handful," which began to change color on the third day after

the accident. Other witnesses testified as to declarations made by decedent as to the cause of the injury. On April 24th, Dr. Sobel was called to attend decedent and he later called Dr. Boyer, who found the decedent suffering from cellulitis. On April 25th, Dr. Replogle, a surgeon for the defendant company, called on the decedent at his home. Decedent received medical attention at his home until April 30th, when he was taken to the Cambria Hospital where he died on May 2, 1930. Dr. J. B. Lowman, who was the chief physician at the hospital, testified that when the patient was admitted to the hospital, he was suffering from cellulitis in a very advanced stage of the left chest and back; that cellulitis is an infection of the cellular tissues under the skin; and a culture which was made showed a streptococus infection which in the absence of any organic trouble (none of which was found) could be produced by a blow; but he was unable to say whether it was systemic or traumatic. Dr. J. P. Kerr, an impartial physician appointed by the referee, testified that the death of Bracken was directly due to the cellulitis as the result of the injury. Claimant's son testified that on the day following the accident he notified Mr. Bailey and Mr. Livingstone, the two foremen of the defendant company, and when Mr. Bailey was called to the stand and asked whether or not William Bracken reported on the 24th of April that his father had injured his back by bumping against the gate, replied that he might have but didn't remember about it. Further testimony indicates that on April 25th notice was received by the relief department of the defendant company, which department was conducted in the same office as its compensation department, advising them that Mr. Bracken had sustained an injury and was disabled.

Appellant contends that the declarations made by the decedent to the son, widow, other relatives, and

neighbors as to the alleged accident were incompetent as being entirely hearsay and, therefore, the award was based upon incompetent evidence and should be reversed.

In determining whether the award should be sustained, the fact that incompetent testimony was received is not controlling if there was sufficient other competent testimony upon which the referee could base his findings of fact. In Wiltbank v. Fire Association of Philadelphia et al., 293 Pa. 206, the court in a per curiam opinion stated: "We recently said, in Johnson v. Payne-Yost Construction Co., 292 Pa. 509, that, 'while the record of every (compensation) award must show it to be supported by competent proof, yet the rules of evidence are not applied in these cases with the same rigor as in litigation before a jury,' adding, 'Of course, even in compensation cases the material findings must have a basis of legal proof on which to rest, and may not be based on hearsay alone (but) where there is other evidence to establish the material facts although some hearsay may have been admitted, the courts will not for that reason reverse a compensation award.' " The circumstances independent of the hearsay testimony from which the referee could have found that decedent had received an injury in the course of his employment are as follows: decedent's usual good health on the morning that he entered defendant's plant; his complaint of pain in the back a short time after he left the plant and his inability to walk to his home from the street car; that he arrived home physically ill and that an examination of his back by his wife, son, and sister-in-law showed the existence of a large lump on his back; the subsequent development of the cellulitis in the definite region of the lump; the virulent form of the infection which according to medical testimony comes where there is a break of the covering of the skin; and that

cellulitis can be caused by a blow and the decedent had no organic trouble except the cellulitis. These circumstances were sufficient from which the referee could have found that the decedent suffered an injury while in the course of his employment, as the result of which death followed.

The assignments of error are overruled and the judgment is affirmed.