Nesbit *v.* Vandervort & Curry et al., Appellants.

Argued April 14, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Samuel G. Wagner,* with him *George Y. Meyer* and *L. A. Nunnink,* for appellants.

*Horace Thomas, Jr., James F. Coyle,* and *Horace Thomas,* for appellee, were not heard.

OPINION BY KELLER, P. J., July 15, 1937:

William Q. Nesbit was employed as an embalmer by Vandervort & Curry, undertakers, in Coraopolis, Pennsylvania. He was their only employee. If he was not covered by the insurance carrier's policy, nobody was. His employment was not continuous. The nature of the business was such as to require his services only when a body was to be embalmed. But whenever needed by them he was on call and responded. He assisted them in the preparation for burial of about 65 bodies in the course of a year and was paid $10 on each occasion. He was an employee working under them, not a contractor, as contended by the insurance carrier defendant at the hearing.

On November 10, 1932, about 7:00 o'clock in the evening, he was sent for by his employers to help embalm the body of one Andrew Shingler, who had died of a ruptured abscess in the region of the diaphragm. An autopsy had been performed, which disclosed pus in that region. In performing the autopsy the ribs were severed by 'cutting forceps' in order to expose the heart, lungs and organs beneath. But the severing was

not a clean or smooth cut or break.[1] It left sharp edges on the rib bones. A part of Nesbit's work that evening was to tie off the carotid artery. To do so he had to reach up past these rib bones with their sharp edges.

Nesbit returned to his home some time after dark and as soon as he came into the house said to his wife, "Look at the scratch I got embalming that body," and showed her a scratch near the base of the back of the second finger of the left hand. It was about half an inch long and had bled, but was not then bleeding. It seemed a rather deep scratch or cut. He said further, "I don't like it, knowing what was wrong with the man. What shall I put on it?" She got him some mercurochrome which she put on it. He was restless nearly all night and his hand started to swell during the night. The next morning he went to his employers, showed Mr. Curry the scratch, said he had got it "last night" while working on the Shingler body, and asked for some salve which they kept for such cuts or scratches. When he arrived home that night he was sick and suffering great pain in his left hand, which was swollen to several times its natural size. The next morning, November 12th, Doctor Braden, the family physician, was called in. Fortunately for the claimant, he happened to be the same doctor who had performed the autopsy on Shingler. He was told the history of the illness, found

[1] Mr. Curry testified: "When they cut them they don't cut them clear off. They break them off, and they have edges on them.

Q. You say when they cut the bones they don't cut them clear off? A. No.

Q. Was that the case with Mr. Shingler's body? A. Yes, that's the case with all of them.

Q. Was it with Mr. Shingler's in particular? A. Yes, sir.

Q. In other words, his ribs had been cut? A. Yes.

Q. But not completely cut through? A. Yes.

Q. Then they had broken them back like this, making jagged edges on the ribs, is that correct? A. That is correct.

Q. And that was the condition Mr. Shingler's body was in? A. Yes, sir."

an ulcer at the point where Nesbit had received the scratch and diagnosed the trouble as cellulitis. The next day, by the doctor's orders, Nesbit was taken to a hospital, where his condition grew steadily worse and five days later, on November 18th, he died of streptococcic cellulitis. The pus taken from his hand was sent to the laboratory and found to "consist of almost pure streptococcus." The doctor testified that in his opinion Nesbit's death was the direct result of the infected scratch on his hand, and the circumstances all pointed to a scratch from one of the sharp bone edges in Shingler's body.

No fair minded person reading the record in this case can have any reasonable doubt that Nesbit's death was directly due to a virulent infection received through a scratch on his left hand which he got while he was engaged in embalming Shingler's body. His wife testified that he had no scratch on his hand when he left to go to his employer's place to do the embalming. He had it when he came back and referred to it immediately on his return. At that time, and when he told his employer the next morning, he had no reason to expect any fatal or even serious result. On the other hand, the subsequent events leading up to his death are the natural sequelae of a virulent streptococcic infection. The circumstances all point to the sharp edged bones as the cause of the scratch and the pus from the abscess in the body as the source of infection. Leaving out of the case the declarations to his wife and to the doctor and to his employer, as too remote to form part of the res gestae, the circumstances, as shown by the relevant testimony of competent witnesses, point unmistakably to death from an accidental injury received while in the course of his employment. These circumstances are at least as strong and convincing as in a number of cases where they were held sufficient to sustain an award or a verdict, even with the declarations

of the decedent, objected to as not being within the res gestae rule, left out. See *Wiltbank v. Fire Assn. of Phila.*, 293 Pa. 206, 142 A. 208; *Johnston v. Payne-Yost Const. Co.*, 292 Pa. 509, 141 A. 481; *Bracken v. Bethlehem Steel Co.*, 115 Pa. Superior Ct. 251, 175 A. 643; *Tomczak v. Susquehanna Coal Co.*, 250 Pa. 325, 327, 328, 95 A. 465; *McCauley v. Imperial Woolen Co.*, 261 Pa. 312, 323-325, 104 A. 617; *Smith v. Welsh Bros.*, 102 Pa. Superior Ct. 54, 57, 156 A. 598; *Thompson v. Conemaugh Iron Works*, 114 Pa. Superior Ct. 247, 255, 256, 175 A. 45; *Van Eman v. Fidelity & Casualty Co.*, 201 Pa. 537, 51 A. 177; *Neely v. Provident Life & Acc. Ins. Co.*, 322 Pa. 417, 185 A. 784.

In such cases the fact finding body, the referee, board or jury, has a right to use the conclusions and tests of ordinary everyday experience and draw the inferences which reasonable men would thus draw from similar facts: *Neely v. Provident Life & Acc. Ins. Co.*, supra.

While awards in workmen's compensation cases cannot rest wholly on hearsay evidence, (unless not objected to: *Poluski v. Glen Alden Coal Co.*, 286 Pa. 473, 476, 133 A. 819) the Workmen's Compensation Law, by its very nature, contemplates liberality in the admission of proofs and the inferences reasonably to be drawn therefrom *(McCauley v. Imperial Woolen Co.*, supra, p. 325), and where the facts are sufficiently established by circumstantial evidence, hearsay testimony, not inconsistent therewith, if relevant and material to the fact in issue *(Poluski v. Glen Alden Coal Co.*, supra, p. 476) may be considered for the additional light, if any, that it throws on the matter.

In the present case, the employer plainly showed that he had no sympathy with the defense against this obviously just claim. The contest was the act of the insurance carrier, who is given the right to defend as the employer's representative. We realize that insur-

ance companies have to be on their guard against fraudulent claims, but a reasonably wide experience ought to give them the ability to discriminate between suspicious claims that savor of fraud and obviously honest ones, and the strict rules of evidence should not be insisted upon too rigorously, to the exclusion of a just claim. Otherwise, the legislature, on the ground of necessity, may feel obliged to relax the hearsay rule so as to permit the admission of declarations made by the deceased, within a reasonable time and under circumstances that negative premeditation and design, to his wife and family upon his return home. See the comment of Mr. Justice BROWN, afterwards Chief Justice, in *Van Eman v. Fidelity & Casualty Co.*, 201 Pa. 537, pp. 540, 541, 51 A. 177.

In our opinion the circumstantial evidence, taken in connection with the competent direct evidence in the case, fully warranted the fourteenth finding of fact of the referee, that the claimant's husband "while in the employ of ...... Vandervort & Curry, on November 10, 1932, sustained a scratch on the back of his left hand just back of the knuckle joint of the middle finger, which at the same time became infected, totally disabling him from the date of the accident and resulting in his death November 18, 1932"; and this justified the award.

One other matter requires some comment. While appellants' counsel did, at the hearing before the referee, object to the admission in evidence of the employee's declarations to his wife, Mr. Curry and the doctor, respectively, as to how and when he had received the scratch, as being hearsay testimony, on appeal by the defendants from the referee to the board not one word of exception or objection was made by appellants to the findings of fact of the referee relating to those declarations or to the employee having received a scratch on his left hand while engaged in em-

balming Shingler's body, in the course of his employment with Vandervort & Curry; nor to the direct causal effect between that scratch and his death eight days later (See findings 12, 13, 14). The only findings of fact of the referee objected to in the appeal to the board were: "(a) That the deceased, William Q. Nesbit, was an employe of the defendant and at the time of the alleged occurrence, November 10, 1932, was engaged in the furtherance of the business of the defendant; (b) That the weekly wage of William Q. Nesbit at the time of the alleged occurrence was $12.00." The board specifically referred to this and, in consequence, limited its discussion accordingly, in correctly disposing of the objections to the award: (a) The evidence clearly sustains the employment of Nesbit and his work for the defendants in the course of his employment on November 10, 1932, and (b) the basic rate of weekly compensation, $12. had not been found by the referee, but was the minimum fixed by section 307, clause 7, of the Act, as amended by the Act of April 13, 1927, P. L. 186. No other findings of fact were questioned by the appeal. The board is the final fact finding body in workmen's compensation cases, and any exceptions or objections to findings of fact made by the referee as not being warranted by the evidence, should be specifically assigned in the appeal to the board, which has the power to review, revise, modify or set aside the findings of fact of the referee or substitute other findings of its own, upon the evidence in the record or after a rehearing. A failure to except to specific material findings of fact of the referee in an appeal to the board is tantamount to an acceptance of, or acquiescence in, those findings, and objection cannot afterwards be taken, on appeal from the board to the common pleas, to findings of fact of the referee not questioned on the appeal to the board. We have a right to assume, from the fact that exception was not taken in the appeal to

the board to the findings of the referee regarding the circumstances attending the time, place and manner that the employee got the scratch on his hand and its causal connection with his death, that the appellants had accepted the circumstantial evidence as furnishing adequate proof. The statute, in expressly committing to the board the ultimate determination of questions of fact, impliedly requires that objections to the findings of fact of the referee shall be presented to the board by way of exception or assignment of error, and not be first raised on appeal to the common pleas. With like effect, it requires in section 427, as amended in June 26, 1919, P. L. 642, 665, that, on appeal from the board to the common pleas, the appellant "shall file with his notice of appeal such exceptions to the action of the board as he may desire to take, and shall specify the findings of fact, if any, *of the board, or of the referee sustained by the board,* which he alleges to be unsupported by competent evidence." The words of the statute which we have italicized clearly imply that objections to the findings of fact of the *referee* shall not be raised for the first time on appeal to the common pleas; that only such findings of fact of the referee as have been excepted to, and considered and sustained by the board shall be assignable on appeal to the common pleas.

The judgment of the court below is affirmed.