## Vadnal v. Krsul-Kutchel Coal Company et al., Appellants.

270

Argued April 29, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*S. H. Torchia,* with him *Ralph H. Behney* and *Claude T. Reno,* Attorney General, for appellants.

*A. L. McLaughlin, Jr.,* with him *Arthur R. Rack* and *Leroy E. Broeder,* for appellee.

OPINION BY CUNNINGHAM, J., July 23, 1942:

In this workmen's compensation case we have an appeal by the insurance carrier, on its own behalf and that of the employer, from the judgment entered by the court below upon an award of compensation to the claimant, Jane Vadnal, made by the referee and affirmed by the board, upon the basis that her fifty-eight year old husband, Matthew Vadnal, a coal digger and loader in a mine of the defendant employer, Krsul-Kutchel Coal Company, on December 6, 1935, sustained an

injury by an accident (within the meaning of Section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §§411, 431), while in the course of his employment, and that his subsequent death, on July 4, 1936, admittedly by suicide, was attributable to a form of insanity caused by the accident.

Claimant's admission that her husband committed suicide by hanging himself to a tree near their home relieved appellants of the burden of proving his death was self-inflicted, which would otherwise have rested upon them under the concluding provision of the section, (77 PS §431) that "no compensation shall be made when the injury or death be intentionally self-inflicted, but the burden of proof of such fact shall be upon the employer." As to the issue and burden of proof, the present case is similar to *Kasman v. Hillman Coal & Coke Company,* 149 Pa. Superior Ct. 263, 27 A. 2d 762, and *Cubit v. Philadelphia,* 138 Pa. Superior Ct. 325, 10 A. 2d 853. It was therefore incumbent upon claimant to prove: (1) The occurrence of an accident in the course of employment; and (2) that the death was not *intentionally* self-inflicted but was the result of a mental condition caused by the accidental injury, *i.e.* that decedent "killed himself while possessed by an uncontrollable insane impulse, or while in a delirium or a frenzy, without rational knowledge of the physical consequences of his act." See *Kasman v. Hillman Coal and Coke Company,* supra, and cases there cited.

The proceedings before the compensation authorities need not be detailed. After an extended hearing before the referee an award was entered but reversed by the board upon the ground of insufficiency of the evidence to support a conclusion that the suicide resulted from the accident. Claimant appealed to the common pleas and also filed a petition for a rehearing in order to afford her an opportunity to present the expert medical testimony of Dr. Charles H. Henninger, a specialist

in mental and nervous diseases of twenty-nine years' experience. A rehearing was granted and the record recalled from the common pleas.

After a hearing at which the only testimony taken was that of Dr. Henninger, the referee made the following material findings of fact from the full record:

"Fourth: That on December 6th, 1935, at or about 12:00 o'clock noon the decedent, while in the act of putting up ceiling posts in the mine, the ceiling post slipped and crushed the decedent crumpling him up under the weight of the post.

"Fifth: That the defendant was aware of the accident, one of the employers being called to the scene of the accident almost immediately after the occurrence.

"Sixth: That as [a] result of the injury sustained by the accident during the course of his employment, the decedent was totally disabled from December 6th, 1935, up to July 4th, 1936, that under date of July 4th, 1936, the decedent hung himself to an apple tree near his home.

"Seventh: That the above entitled case came on for rehearing May 19, 1939, at which time Dr. C. H. Henninger, an impartial physician was called to testify, and after hearing the testimony of the impartial physician, your referee believes and so finds as a fact that the decedent died as [a] result of a mental condition which came on as [a] result of the injuries sustained by accident during the course of his employment with the defendant on December 6, 1935."

In accordance with these findings an appropriate award of compensation was entered.

Although appellants had contended before the referee that the admitted total disability from which decedent suffered subsequent to December 6, 1935, was due to a preexisting hypertrophic spondylolisthesis rather than to the occurrences of that date, and also questioned the sufficiency of the notice to the employer,

the only exception they took to the findings of the referee, when they appealed to the board, reads: "We appeal from the referee's 7th finding of fact wherein he finds that decedent's death was the result of a mental condition resulting from injuries sustained while in the course of his employment and aver that this is contrary to and not supported by the testimony of record."

The board, in an opinion by Chairman MURPHY, affirmed the findings, conclusions of law and award of the referee, remarking, inter alia: "In our judgment, a clear preponderance of the testimony establishes that the claimant's decedent [sustained the accident and injuries averred] ......; that as a result of the accident, the decedent became depressed and worried, finally suffered a mental breakdown and became a victim of a form of insanity, known as melancholia; that on July 4, 1936, the decedent committed suicide by hanging as a result of this insanity." In support of its conclusion the board cited *Gasperin v. Consolidated Coal Co.*, 293 Pa. 589, 143 A. 187.

Upon the appeal of the employer and carrier to the common pleas, that tribunal, in an opinion by MUS-MANNO, J., held the findings of the compensation authorities were sustained by the evidence and entered the judgment upon the award now appealed from.

The exceptions filed by appellants in the court below covered the findings relative to the accident and resulting injuries and the fact of notice to the employer as well as the finding of suicide while insane as a result of the accident. The first paragraph of their statement of questions involved upon this appeal also relates to the same matters. They were not entitled to raise in the court below any question concerning the sustaining of a disabling accident by the decedent in the course of his employment, or with relation to the sufficiency of the notice thereof to the employer.

Nor was there any justification for attempting to bring those matters to our attention.

As stated by President Judge KELLER in *Nesbit v. Vandervort & Curry et al.,* 128 Pa. Superior Ct. 58, 64, 193 A. 393: "A failure to except to specific material findings of fact of the referee in an appeal to the board is tantamount to an acceptance of, or acquiescence in, those findings, and objection cannot *afterwards be taken,* on appeal from the board to the common pleas, to findings of fact of the referee not questioned on the appeal to the board." (Italics supplied.) The only question of law, therefore, with which we are concerned on this appeal is whether the record contains substantial and competent evidence supporting the above quoted seventh finding of fact.

Claimant testified that prior to December 6, 1935, her husband was "fine" and "healthy" but after the accident a cast was placed upon his back, following the removal of which he exhibited these symptoms: "All his blood went to his head, his eyes were bloodshot, he shook all over"; these nervous attacks, during which he trembled about "10 or 15 minutes," occurred as often as three times a day shortly before his death; he also continually complained that he was an "invalid", that he would be "deported" and that his family would be put in jail.

Dr. T. S. Armstrong, an orthopedic surgeon who treated the decedent, testified that shortly before his suicide the patient "seemed much depressed and worried." An excerpt from his testimony reads: "Q. Then it is your opinion with the histories that you have in the case and your treatment, [and] from your last seeing him a couple of days before his death, that his mental state was the cause of him doing violence to himself that ended in his death, is that your opinion, doctor? A. That's my opinion." This witness expressed

the opinion that the accident was a contributory cause of the employee's death.

Dr. Sue M. Kalen, a general practitioner and decedent's attending physician, also stated that in her professional opinion the accident "was absolutely contributory to the end."

Dr. Henninger (whose qualifications as a specialist in mental and nervous diseases were conceded by counsel for appellants), basing his conclusions upon a study of the record, testified: "...... in my opinion ...... this man was insane ...... he committed suicide by reason of his insanity, and ...... the insanity was a form of melancholia. Further, in my opinion ...... the injury to his back was not a direct cause but an attributing cause through his physical disability, and the anxiety and worry and stress as a result of this injury caused him to have a mental breakdown."

After he had stated that persons suffering from "depression or melancholia" are "potentially" suicidal, the witness was asked, "And do they have any more control over their actions than persons suffering from delirium or frenzy?" to which he replied "No."

In our opinion, the medical testimony upon this record is sufficient in quantity and quality to sustain the finding of the board that the employee's death was not intentionally self-inflicted, but that he "killed himself while possessed by an uncontrollable insane impulse," attributable to the accident sustained in the course of his employment.

Judgment affirmed.