Barbaryka *v.* Henderson Coal Company et al.,
Appellants.

Argued October 28, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.
(RENO, J., absent).

*Karl E. Weise,* for appellants.

*Francis H. Patrono,* with him *A. V. Capano,* for appellee.

OPINION BY KELLER, P. J., March 3, 1944:

This appeal is chiefly concerned with the sufficiency of the evidence to support certain findings of fact of the Workmen's Compensation Board, namely: (1) That claimant sustained an accident in the course of his employment resulting in a compensable injury. (2) That the claimant's present total disability is the result of that accident.

If these findings are upheld then the following related questions arise:

(3) Does the record show that due notice of the accident was given the employer?

(4) What amount of compensation is the claimant entitled to?

This last question may be subdivided into: (a) Claimant's weekly rate of compensation. (b) His total compensation—which involves the constitutionality of section 306(a) of the Act of June 4, 1937, P. L. 1552.

(1) There is ample evidence to sustain the board's finding of a compensable accident.

Claimant was employed by defendant as a coal

loader. On May 25, 1939, he and his father were working at their job of loading the coal. After the *coal* was all loaded, they started to remove the *rock,* which had fallen with the coal and had to be taken out. Claimant came upon a piece of rock, three or four feet long, weighing 75 to 100 pounds and too big to be shoveled out. He put down his shovel and crouching over started to lift the rock with his hands and arms. While lifting, his right foot slipped, and the weight of the rock pulled him off balance, and he went down, falling on his chest upon the rock, and a burning pain "just like an electric shock" went through him, followed by a hot pain, "just like a knife", in his spine, causing him to cry out, and say, "I think I hurt my back". He has not been able to work since. He was corroborated by his father. His *present* total disability is not questioned.

The slipping of his foot, followed by his fall on his chest when the weight of the rock pulled him over, was an accident, and as it immediately disabled him, it was compensable. We do not have to know just how and why it happened. It is enough to know that it did happen and that it was in the course of his employment.

(2) Claimant, while a young child, had tuberculosis, resulting in a deformed spine, in the nature of a hump. However, he was able to work in the mines and had done so for four years prior to the accident. Two physicians called as witnesses by the claimant testified, in substance, that he had a latent tubercular condition which was activated by the accident and progressed rapidly into total disability. Three physicians were called by the employer or its insurance carrier. One testified that the disability was due to Pott's disease— a tuberculous infection of the spine. Another diagnosed the trouble as pachymeningitis, inflammation of the outer membrane covering the brain and spinal cord;

but he admitted that the condition could have resulted from activation of a latent process. The third, basing his opinion on the hypothesis that no accident had occurred, gave it as his opinion that claimant's disability was caused by a gradual process of long development and was not due to an accident. The referee denied compensation on the ground that claimant's condition was not connected with the alleged accident.

On appeal to the board, that body felt that the conflict of medical testimony could best be resolved by remanding the record to the referee for the purpose of taking the testimony of an impartial medical expert or experts.

This was done and the testimony of Doctor C. C. Yount and Doctor H. L. Mitchell, physicians appointed by the board, was taken. They had examined him on April 28, 1941. Dr. Yount testified that if the evidence regarding the injury was true and the occurrence was as stated by the claimant and his father, the accident was "a definite factor in stirring up the latent pathology in the tubercular area which manifested itself in acute symptoms, namely pain and later paralysis".

Dr. Mitchell testified "It is my opinion that the old tuberculous process could have been and probably was activated and turned into a state of increased activity by this trauma". To the claimant's attorney's cross-question: "In view of the fact that there is no other history, is it reasonable to assume that the accident of May 25, 1939 was a precipitating factor of this tuberculous condition?", he answered "I believe so".

The testimony of these impartial experts, taken in connection with that of claimant's medical witnesses, was sufficient to support a finding that the claimant's present total disability was caused by the accident, within the intendment of the Workmen's Compensation Law. The referee, after hearing the evidence of

the impartial witnesses made, inter alia, the following finding of fact:

"Third: From the foregoing and all the testimony introduced in this case, your referee believes and so finds as a fact that the claimant suffered an injury by accident on May 25, 1939 in the nature of an aggravation of a former latent tubercular condition, and that the claimant has been totally disabled from May 25, 1939 up to the present time and shall continue to be totally disabled for an indefinite period." He awarded compensation under section 306(a). On appeal by defendants the board affirmed the referee's findings of fact, conclusions of law and award. As the board found that the accident had occurred, as testified to by claimant and his father, the medical testimony supported the finding of causal relation between the accident and the disability.

(3) The referee made no finding as to notice of the accident, but the board did, as follows: "Defendant also argues that proper notice was not given by the claimant as to the happening of an accident. The testimony given by claimant on this question is as follows: [pp. 12a-13a] '...... And then, Mr. Jans came over, that's the mine boss, and I started telling him about this. I said, "I was lifting rock and I hurt my back".'[1] In our opinion this language is sufficient to constitute notice of an accident. It is not necessary for a claimant to specifically describe exactly what happened. All that is necessary is that defendant have notice of the occurrence of an accident. The above quoted testimony constitutes sufficient notice as required by the Act." This finding, supported by claimant's further testimony (pp. 16a, 17a), that the next day he went to see the company doctor, Doctor McKee, (now deceased), satisfies the legal requirement as to notice.

---

[1] Claimant gave fuller testimony of this conversation on pp. 13a, 15a and 16a.

(4) The accident happened on May 25, 1939, when the Act of 1937 was in force and effect. Under section 306(a) of that Act the injured employee, if totally disabled, was entitled to receive by way of compensation during the first 500 weeks after the seventh day of total disability 65 per centum of his average weekly wages not exceeding $18 per week. If the disability became permanent, then, under that act, in addition to that compensation, he would receive, beginning at the expiration of said 500 weeks, the sum of $30 per month as long as he lives. It is conceded—and was so found— that the claimant's average weekly wages amounted to $27.11. Sixty-five per centum of this would be $17.62, instead of the $15 awarded by the referee and the board. Accordingly, on appeals by both parties to the common pleas, the court sustained the board on its findings that claimant was entitled to compensation, but increased the weekly compensation payable to claimant from $15 to $17.62, and the maximum compensation from $6,500 to $8,810.

We see no reason for reversing the judgment fixing the weekly compensation award at $17.62. Under the act in force at the date of the accident, that is the amount he was entitled to. If the error was a clerical one, it could be corrected at any stage of the proceeding, even in this court: *McGee v. Y. & O. Coal Co.,* 121 Pa. Superior Ct. 85, 94, 182 A. 773; *Horwath v. Budd Mfg. Co.,* 127 Pa. Superior Ct. 154, 161, 191 A. 675; *Cimo v. State Workmen's Ins. Fund,* 133 Pa. Superior Ct. 51, 52, 1 A. 2d 919; *Lemke v. Hazle Brook Coal Co.,* 126 Pa. Superior Ct. 155, 157, 191 A. 196; *Petrulo v. O'Herron Co.,* 122 Pa. Superior Ct. 163, 168, 186 A. 397. The ruling in *Nesbit v. Vandervort & Curry,* 128 Pa. Superior Ct. 58, 64, 193 A. 393, relied on by appellant, related to findings of fact, not to matters of law. See also *Dazely v. Luckenbach Steamship Co.,* 133 Pa. Superior Ct. 507, 3 A. 2d 190, 336 Pa. 432, 9 A. 2d 905.

If it was in consequence of the pending appeal in the case of *Rich Hill Coal Co. v. Bashore,* 334 Pa. 449, 490-494, 7 A. 2d 302, this defendant did not intervene or file a bond in that case; and, besides, we think that *that* part of the award is not here open to question. The Act of June 21, 1939, P. L. 520, also fixes the maximum weekly award payable to an injured employee at $18 per week, and as that act has not been questioned on constitutional grounds, we think it can be assumed that a maximum compensation of $18 per week is not so unreasonable as to be unconstitutional. The number of weeks during which compensation for disability may be payable has from the beginning been fixed at 500, so that is not likely to be disturbed. The chief points at issue with respect to the award to an injured employee for total disability are (1) the *minimum* weekly compensation fixed in the act—$12—and the clause giving him in case of *permanent* total disability the sum of $30 a month as long as he lives, to begin at the expiration of the 500 weeks (see 334 Pa. p. 461); and (2) that there is no fixed maximum for total disability compensation, less than $9,000.

Under the Act of 1915, P. L. 736, the compensation was fixed at 50% of the average weekly wage, not exceeding $10 per week for 500 weeks, with a maximum payment of $4,000.

Under the Act of 1919, P. L. 642, it was fixed at 60% not exceeding $12 per week for 500 weeks, with a maximum of $5,000.

Under the Act of 1927, P. L. 186, it was fixed at 65%, not exceeding $15 per week for 500 weeks, with a maximum of $6,500.

Under the Act of 1939, P. L. 520, it is fixed at 66 2/3%, not exceeding $18 per week for 500 weeks, with a maximum of $7,500.

Under the first three acts above-referred to there was a difference of $1,000 between the maximum weekly pay-

ment multiplied by 500 weeks and the maximum amount recoverable by claimant.

Under the Act of 1939, the difference is $1,500.

Under the Act of 1937, there was no maximum fixed less than the amount obtained by multiplying $18 per week by 500 weeks, or $9,000.

If $18 is a reasonable payment of weekly compensation, and 500 weeks is a reasonable period for compensation for total disability, then we can see nothing *unreasonable* in multiplying the one by the other to obtain the maximum compensation payable.

The provisions in the Act of 1937 chiefly complained of as being so unreasonable as to be unconstitutional, and therefore unlawful, are (1) the awards of compensation to the dependents of deceased employees, (2) the *minimum* compensation of $12 per week, and (3) the award of $30 per month for the rest of the claimant's life, after the expiration of the 500 weeks, in case of permanent total disability. The first was involved in the cases of *Guzzy & Adonizio v. Volpe Coal Co.*, 144 Pa. Superior Ct. 347, 19 A. 2d 547; *Ware & Weaver v. Northern Metal Co.*, 147 Pa. Superior Ct. 102, 24 A. 2d 119. The second does not arise here; and the third will not probably become a matter of moment in this case until the pending *Rich Hill* cases are disposed of; and if the diagnosis of the physicians who last examined claimant proves correct and he improves sufficiently to pass from total to partial disability, or his total disability does not prove permanent, it will not be material in this case.

In any event, the judgment of the court below is specifically made subject to changes in conditions, and will likewise be subject to any changes in the law then applicable, resulting from the decision in the *Rich Hill* cases respecting the constitutionality of the 1937 Act.

Subject to this condition, the judgment is affirmed.