## Lambing v. Consolidation Coal Company, Appellant.

Argued April 16, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Edw. J. I. Gannon,* with him *Hazlett, Gannon & Walter,* for appellant.

*Samuel Krimsly,* for appellee.

OPINION BY ROSS, J., July 17, 1947:

In this workmen's compensation case, the widow of Glenn Lambing, a loading machine operator employed by the defendant in its mine, filed a claim petition on

behalf of herself and four minor children, averring that the decedent on July 5, 1944, while in the course of his employment, was injured by the fall of a mine timber, receiving injuries which resulted in his death on October 19, 1944. An answer was filed denying that Lambing sustained an accidental injury in the course of his employment and that his death resulted therefrom, and also raising the question of notice. After hearing, the referee made an award which was upheld by the board and the court below and this appeal was taken by the defendant employer.

The referee, affirmed by the board, found as a fact, inter alia: "Fourth: On July 5, 1944, the decedent was bruised on the right shoulder with a timber in the course of his regular employment with the defendant and, as a result thereof, this wound became infected and the decedent came to his death on October 19, 1944, from staphylococcic septicemia and acute pulmonary edema which, in the opinion of your Referee, was caused by the bruise received in the accidental occurrence of July 5, 1944." The first question involved in this appeal is whether this finding of fact is supported by competent evidence, and unless it can be said that the findings are not supported by substantial competent evidence, they cannot be disturbed. *Petrovan v. Rockhill Coal & Iron Co.,* 130 Pa. Superior Ct. 58, 196 A. 516; *Barkus v. Thornton-Fuller Co.,* 157 Pa. Superior Ct. 239, 42 A. 2d 320. As the fact-finding body has found in her favor, we must review the evidence in the light most favorable to the claimant (*Hockenberry v. State Workmen's Insurance Fund,* 133 Pa. Superior Ct. 249, 2 A. 2d 536), and she is to be given the benefit of inferences reasonably deducible therefrom. *Paulin v. Williams & Co., Inc., et al.,* 122 Pa. Superior Ct. 462, 186 A. 415, affirmed 327 Pa. 579, 195 A. 40.

The only medical witness in the case, Dr. H. S. D. Mock, who had attended the decedent, testified, inter alia: "Q. And what was the cause of death? A. The cause of death was staphylococcic septicemia and em-

pyema. In other words, septicemia is a germ in the blood stream and empyema is multiple pus, pus in the blood accompanied by pus all through the body. . . . Q. Taking into consideration, Doctor, the history that you received from the claimant and the findings on your physical examination and the eventual cause of death, are you able to state whether or not there is any connection? A. In my opinion, the wound on his shoulder became infected with this staphylococcic germ, which spread through his body and was the cause of his death. Q. Doctor, how does one contract such a disease as staphylococcic germ? A. It comes through a break in the skin. Q. Is that the only way it comes or can be contracted? A. Yes. Q. Are you able in your professional opinion to say where this germ had its portal of entry? A. The right shoulder. Q. At the point of injury, Doctor? A. Yes, sir." This testimony is sufficient to establish the causal connection between the bruise on Lambing's shoulder and his death. However, a more difficult problem is presented by defendant's contention that there is not sufficient evidence to support the referee and board's finding that "the decedent was bruised on the right shoulder with a timber in the course of his regular employment with the defendant". The decedent was working alone, there were no eye witnesses to the accident and an accident cannot be inferred merely from an injury. There must be some evidence, direct or circumstantial, in the latter instance, clearly and logically indicating it. *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 3 A. 2d 377.

The testimony shows that the decedent left his home at 9:30 p.m. to start his work in defendant's mine at 10 o'clock on the night of July 5; that he operated a loading machine in room No. 6; that sometime before 5 o'clock the next morning a 12-foot 200-pound roof timber in room No. 6 fell to the ground; that a witness, Crawford, had been sent at 5 o'clock to replace the timber, and the decedent was then working in room No. 4,

having "cleaned up" room No. 6; that at 6:30 in the morning Crawford and the decedent rode to the surface on the same man trip and left the defendant's mine together. Crawford testified that the decedent stated to him, "He said his shoulder was bothering him. He said, 'You know that timber you replaced, Crawford?' I said, 'Yes'. He said, 'That is the timber that hit me on the shoulder' "; and referring to Lambing, "He unbuttoned his shirt—he had light underwear on and his shirt and coat, and he pulled his shirt back and showed me the bruise he had on his shoulder. Q. Which shoulder was it on? A. The right shoulder."

The widow testified that when the decedent left the home on the night of July 5, he was in "perfect" condition, that she saw his back and shoulders and there were no bruises or marks on them; that when he returned to his home about 7 o'clock the next morning, he said, "I got hit last night", and that "When he took his underwear off to bathe, his shoulder was cut and bruised, you know, skinned, just like something had hit him, you know. Q. What shoulder was it? A. Right shoulder." and "He told me timber had got knocked out and come down and struck him on the shoulder. Q. Did he say where this occurred? A. No, where he was working, but I don't know just where he was working here. Q. In the mine? A. It was in the mines where he was working." She testified that she treated the bruise with mercurochrome and she was corroborated in this by a neighbor woman, Mrs. Oswalt, who also saw the bruise and the application of mercurochrome.

Aside from the hearsay evidence, which we will discuss later, it is our opinion that there is sufficient direct and circumstantial evidence to support the finding that the decedent was injured during the course of his employment. In our opinion this case is not distinguishable from *Ceccato v. Union Collieries Co.,* 141 Pa. Superior Ct. 440, 15 A. 2d 401. In that case, before decedent went to work in the morning in question he was,

and had been, a man apparently in good health and free from any knee injury. His home was only a half mile from the mine entrance. When he came out of the mine, after working three hours alone, he showed a witness a "bump" on the side of his right knee, and the marks of an injury were shown to other witnesses, including his wife. We held that the facts "constitute a natural sequence of events clearly and logically indicating decedent accidentally injured his knee while in the mine. All of them are consistent with that inference and exclude with reasonable certainty the possibility that he received the injury some other place."

In *Heite v. Vare Construction Co.*, 129 Pa. Superior Ct. 204, 195 A. 437, relied upon by appellant, there was no natural connection between the employee's work and the accident, such as is present in this case. In that case, the employee apparently was injured by a board which fell on his foot and injured his toe. No one testified to the presence of such a board on the premises where he was employed, and there was no apparent reason or purpose for its being there. He was a watchman and there was nothing to show that he had anything to do with the handling of boards. This court, in holding that the circumstantial evidence was not sufficient to prove an accidental injury, stated: "The injury to the foot was not something naturally connected with his employment and could just as probably have occurred anywhere else as on his employer's premises."

In the instant case, it is in evidence that the decedent was unbruised when he went to work, that a roof timber had fallen in the room where he had been working that night, and that he had the shoulder bruise when he left the mine the next morning. Under this evidence we believe that it is reasonable to conclude that there was a natural connection between his work and the accident and that the circumstances would appear to be such as to satisfy "reasonable and well balanced minds that an accident did occur". *Piotrowski v. Dey Co.*, 123

Pa. Superior Ct. 29, 185 A. 862. The fact-finding body has a right to use the conclusions and tests of everyday experience and draw the inferences which reasonable men would thus draw from similar facts (*Neely v. Provident Life & Acc. Ins. Co.*, 322 Pa. 417, 185 A. 784), and these all point to decedent's injury while in the course of his employment in defendant's mine. Cf. *Broad Street Trust Co. v. Heyl Brothers,* 128 Pa. Superior Ct. 65, 193 A. 397; *McCauley v. Imperial Woolen Co.,* 261 Pa. 312, 104 A. 617; *Nesbit v. Vandervort & Curry,* 128 Pa. Superior Ct. 58, 193 A. 393; *Johnston v. Payne-Yost Construction Co.,* 292 Pa. 509, 141 A. 481; *Bracken v. Bethlehem Steel Co.,* 115 Pa. Superior Ct. 251, 175 A. 643.

The defendant objected to the testimony of Crawford on *direct examination* and of the widow relative to statements made to them by the decedent concerning the manner in which he had been injured. The board and the court below held that the statements of the decedent were not part of the res gestae and we agree with that conclusion, as it was not shown that "they were made under such circumstances as would raise the reasonable presumption that they were spontaneous utterances of thoughts created by or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditation and design." *Broad Street Trust Co. v. Heyl Brothers,* supra. However, when the defendant cross examined Crawford, it did not question him relative to any of the testimony he had given on direct examination but examined him solely in regard to certain statements allegedly made by him to named individuals who were subsequently called by the defendant to impeach Crawford's credibility. Inter alia, the defendant asked Crawford, "Q. And did you discuss the case with them or did they just tell you —A. They just asked me if I knowed anything about anyone getting hurt at the mine. I said I didn't know much about it. I told them he just told me he had been hit with this timber, been knocked out". The defendant

made no motion to strike out this testimony but continued with its cross examination. Consequently, it is properly in the record (*Poluski v. Glen Alden Coal Co.,* 286 Pa. 473, 133 A. 819)—brought there by the defendant—that the decedent said that he "had been hit" with the roof timber that had fallen in defendant's mine, and when the defendant itself introduced "the substance of the previously objected to declaration, he cannot complain if it is received. Cf. Van Eman v. Fidelity & Casualty Co. of N. Y., 201 Pa. 537, 51 A. 177 . . .". *Baker v. Freed,* 138 Pa. Superior Ct. 315, 10 A. 2d 913. Moreover, ". . . where the facts are sufficiently established by circumstantial evidence, hearsay testimony, not inconsistent therewith, if relevant and material to the fact in issue . . . may be considered for the additional light, if any, that it throws on the matter." *Nesbit v. Vandervort & Curry,* supra, 128 Pa. Superior Ct. 58, 193 A. 393.

It is our opinion that the finding that decedent's death was caused by an injury received in the course of his employment is supported by substantial competent evidence. However, the appellant employer contends further that the widow and dependent children are barred from compensation benefits because no notice of the injury was given to the employer under the provisions of the Act of June 2, 1915, P. L. 736, Article III, section 311 as amended, 77 PS 631, which provides: "unless the employe or some one in his behalf, or some of the dependents or some one in their behalf, shall give notice thereof to the employer within fourteen days after the accident, no compensation shall be due until such notice be given, and, unless such notice be given within ninety days after the occurrence of the injury, no compensation shall be allowed." As hereinbefore stated, the accident occurred on July 5, 1944, and the defendant died on October 19, 1944, more than ninety days after the injury, and he had not given the required notice of the injury. to his employer. Consequently, any claim *he* had was barred, but such bar does not affect the rights of the widow and dependent children to compensation.

In *Rossi v. Hillman Coal & Coke Co.*, 145 Pa. Superior Ct. 108, 20 A. 2d 879, this court, speaking through Judge KENWORTHY, stated at page 111, ". . . the right of the widow to secure for herself and dependent children compensation for the death of the employee is, under the act, entirely independent of the right of the employee. It is not derivative and, therefore, not conditioned on the employee having a right at the time of death. This was settled by the Supreme Court in *Smith v. Primrose Tapestry Co.*, 285 Pa. 145, 131 A. 703 (1926), where an injured employee had prior to his death lost his right to compensation by failing to petition for or receive compensation within the statutory period and it was held that the widow was nevertheless entitled to compensation on a showing that the death was caused by the original injury."

The question is whether the requirement as to notice of an injury refers to the rights of a dependent widow and children. As stated by Judge (now President Judge) RHODES in *Polk v. Western Bedding Co.*, 145 Pa. Superior Ct. 142, 20 A. 2d 845, at page 146, "It is true that claimant, on behalf of herself and dependent children, could acquire no right of action for compensation until the death of her husband as the result of his accidental injuries sustained in the course of his employment. She may have had an inchoate right, but had he lived compensation would have been payable to him alone in accordance with the provisions of the act in force at the time of his injury. Upon her husband's death claimant and her dependent children became entitled to receive compensation from her husband's employer . . ."

Appellant argues with some force that by the use of the words ". . . or some of the dependents or some one in their behalf . . ." the legislature intended the notice to be mandatory in all cases but we do not believe that the legislature so intended. The employee's right arises with his accidental injury and he has a co-existing remedy. The widow's right, altho it must be based

upon the injury, does not come into existence until the death of her husband employee and is dependent upon his death. In this case, her right did not come into existence until October 19, 1944, but, at that time, under appellant's contention, she would have no remedy because notice had not been given to the employer. We cannot believe that the legislature in one section of the Workmen's Compensation Act would provide for compensation for the widows and children and in the same act declare that such compensation would be forfeited unless they within ninety days of an injury to the employee, no matter how trivial the injury might seem to be—as in this case—give notice of that injury to an employer known to them perhaps only by name. An employee comes in direct—perhaps daily—contact with his employer or the employer's representative but dependents may never come in contact with them. It is reasonable to require an employee to give notice of his injury to his employer but, in our opinion, it would not be reasonable to impose that burden on his widow or children.

Section 311 of the Workmen's Compensation Act is to be liberally construed (*Uditsky v. Krakovitz*, 133 Pa. Superior Ct. 186, 2 A. 2d 525; *Palermo v. North East Preserving Works, Inc.*, 141 Pa. Superior Ct. 211, 15 A. 2d 44) and it is our opinion that the notice of an injury required by it to be given to an employer applies only to the claim of an employee and not to the separate and distinct compensation claims of dependents.

The claim petition in this case having been filed on September 20, 1945, it met the statutory requirement of section 315 of the Workmen's Compensation Act of 1915 as amended, 77 PS 602, which provides in part as follows: "In cases of death all claims for compensation shall be forever barred, unless, within one year after the death, one of the parties shall have filed a petition as provided in article four hereof."

Judgment affirmed.