## Mahoney *v.* Francis Mulholland Roofing Company et al., Appellants.

Argued March 16, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Louis Wagner,* with him *Thomas J. Clary* and *Richard A. Smith,* for appellant.

*Alexander F. Barbieri,* with him *Albert L. Moise,* for appellee.

OPINION BY STADTFELD, J., April 28, 1939:

This is an appeal by defendants from the judgment

of the Court of Common Pleas No. 3 of Philadelphia County entered on an award of the Workmen's Compensation Board.

The facts are concisely set forth in the opinion by DAVIS, J. of the court below in dismissing exceptions to the findings of the board, from which opinion we quote as follows: "On March 21, 1934, James Mahoney, the claimant, while working as a roofer for Francis Mulholland Roofing Company, fell approximately fifteen feet down the slanting side of a skylight. At the time of his fall, he had in his hand a firepot, two containers of acid, a file, a piece of salimonia, a hammer and shears. He fell on his back, his head hit the roof, stunning him, and he felt a sharp, stinging pain in his left eye. He was treated at the clinic of the S. K. F. Company, immediately after the accident, and for three days following. The eye was discolored, puffed and bloodshot for about five days after the accident. Thereafter he worked for about three months, but had no treatment during that period. In September 1934, while at the Shelter for Homeless Men, he was examined by Dr. Alexanderoff and was told he was blind in the left eye. He was later examined by Drs. Reese, Crampton and Langdon. The examination showed a total and permanent loss of vision of the left eye.

"The referee made an award in favor of the claimant and the board affirmed the referee; the Court reversed the board and remitted the proceeding to the board, which remanded it to the referee for the taking of further testimony.

"Dr. John C. Siggins, then called as an impartial expert, upon the basis of the testimony of Dr. Colcher, an impartial roentgenologist, testified that the loss of vision was the result of a fracture of the fronto-malar process of the fronto-malar bone, due to the accident of March 21, 1934.

"The referee republished his previous finding of fact,

to the effect that claimant was injured in the following manner: 'Something flew into or struck the claimant's left eye—and he felt a sudden sharp pain therein.'

"The board set aside such finding of fact and substituted therefor the following: 'The Board finds that when claimant slid or fell he sustained a fracture of the fronto-malar process of the left malar bone resulting in injury to claimant's optic nerve and a cataract.' " This appeal followed.

Appellants contend there was not sufficient evidence to support the substituted finding of the board, and that the board erred in disregarding claimant's testimony that his disability was the result of either a spark or acid getting into his eye.

This court is not a fact-finding body. If the findings of the board are supported by any legally competent evidence, such findings are final and conclusive: *Ford v. Dick*, 288 Pa. 140, 135 A. 903; *Hale v. Susquehanna Collieries Co.*, 126 Pa. Superior Ct. 342, 191 A. 225. And in determining whether or not there is legally competent evidence to sustain the findings of the board, the claimant is entitled to have the evidence examined in the light most favorable to him, all reasonable inferences being drawn in his favor: *Nazarey v. Lehigh Val. Coal Co.*, 131 Pa. Superior Ct. 93, 198 A. 899. Moreover, it is well settled that the probable nature of an accident, for which compensation is claimed, may be established by circumstantial evidence alone: *Nazarey v. Lehigh Val. Coal Co.*, supra. It may also be added that the same exactness of proof is not required in compensation cases as in suits at common law: *Carson v. Real Estate-Land T. & T. Co.*, 109 Pa. Superior Ct. 37, 165 A. 677; *Fink v. Sheldon Axle & Spring Co.*, 270 Pa. 476, 113 A. 666.

Claimant testified that "it seemed to be acid or the spark"; "what got in my eye I don't know"; "it hit me

so quick that I didn't know what it was all about ......
I couldn't really say."

The uncontradicted testimony establishes that the claimant fell fifteen feet with his hands full and immediately felt a severe pain in his left eye "like a shot." He hit his head with such terrific force as to render him unconscious or dazed for a few moments. He stated, in part, as follows: "Everything went 'blooey' in front of me ...... Q. You had a sharp pain—you say everything went blurred afterwards? A. Yes sir. ...... Q. How long after you slipped off the pinnacle and went into the gutter, how long did you lay there? A. I don't suppose many minutes—like I went out and come to. Q. Can you describe the nature of that pain— tell him what it was like? A. It was just like something got into your eye and everything went black in front of me and I was half dazed with the fall and hit my head on the roof, both feet went in from under me." It is a reasonable inference that the bump on the head occurred in the region beside the left eye, because that is where the pain "like a shot" was felt, and there is no evidence of pain or sensation at any other part of the head. The point of pain at the time of injury may localize the injury. The discoloration at this point furnished additional proof. Quoting from the opinion of the board by its Chairman, Ullman, upon one of the previous appeals to the board: "Of course, at the first hearing, claimant contended that his injury was the result of acid or a spark, but he did testify that he struck his head, and the X-rays, in the opinion of Dr. A. E. Colcher, indicated that a fracture occurred at least two years prior to the making of the negatives. They were taken June 25, 1936, and the accident occurred March 21, 1934. Claimant's failure to realize that the injury to his head might have been responsible for the eye condition is not to be held against him. He is not a physician, and it was natural for him to associate the

immediate onset of the disability to his eye with the tools he was using at the time of the accident."

The expert impartial witness, Dr. John C. Siggins, was most positive in his opinion that the blow had caused the injury and resulting loss of vision. Dr. Siggins testified, upon all the facts in the case, as follows: "My conclusions are that Mr. Mahoney has total and permanent loss of vision of left eye due to injury March 21, 1934. ...... Q. Is it your opinion that the loss of vision this man has is the result of his accident of March, 1934, based on the facts that you had before you? A. Yes."

It was contended or there was at least a suspicion during the progress of the hearings, that there might be syphilis, which could account for the loss of sight, which was answered by Dr. Siggins when he testified that claimant had an optic atrophy which was not caused by syphilis because it was not of the syphilitic type. His testimony on this point appears, in part, as follows: "Q. Assuming that you did not have those results from the Wassermann test, would your opinion have been the same? A. It would. ...... Q. Have you had any history either one way or the other in this case, whether this man had a negative or positive Wassermann? Assuming no tests were made, your opinion would then be the same as you gave it in your report to the referee? A. It would ...... Q. Could it be possible that the present condition could be caused by a syphilitic condition—his present loss of vision? A. I would say no because there is no other factors in the eye that would point to syphilis."

Dr. Siggins' positive opinion was partially based upon the evidence of unusually severe trauma found in X-ray findings of an old healed fracture of the fronto-malar process of the left malar bone. Dr. Colcher previously testified that this fracture was at least two years old. The doctor's examination was on June 25,

1936, and the accident happened on March 21, 1934.

Any possible inference that there might be a syphilitic background because no Wassermann test had previously been made was ruled out at the last hearing by the Jewish Hospital records which showed the negative return of such a test on November 5, 1937.

Defendants also contend that the board has unjustly ignored the claimant's "uncontradicted story of what occurred," because the claimant thought his injury was from a spark or acid that got into his eye.

In *Savolaine v. Matthew Leivo & Sons,* 131 Pa. Superior Ct. 508, 200 A. 243, where the claimant's testimony would not sustain the award, but the medical testimony did, it was held that the medical testimony could properly be the basis for the award, the claimant's testimony to the contrary notwithstanding. In so holding, Judge BALDRIGE for this court states as follows, at p. 512: "The learned court below, in its opinion states, 'In view of this ability of claimant to work, we feel there is not sufficient testimony in the record to sustain the finding of the board. It is based entirely on the testimony of the physicians taken prior to this time. They gave it as their opinion that this man has lost the use of his foot and that is only an opinion.' The fact-finding bodies were not required to disregard the opinion of the medical experts and accept as true the testimony of the claimant. Their testimony was entitled to consideration with the other testimony in determining the disputed issues of fact. The opinion of medical men, especially in compensation cases, is generally very important." The board saw fit to adopt the testimony of Dr. John C. Siggins and in our opinion, it fully supports the findings.

Defendants contend that claimant should have been recalled to testify that the blow to his head was at the site of the fracture; and that the failure to do this is somehow harmful to the claimant. It is obvious in the

record, however, that the claimant told all that he knew about the occurrence and its effect upon him. His explanation was sufficient, since he localized the pain from the head injury that rendered him unconscious, at a point in and about the eye.

It may not be out of place in this connection to quote from the opinion of the board in referring the case back to the referee on June 10, 1936: "...... Why the nurse at the S. K. F. Co. plant, who gave first aid to the claimant, was not called as a witness, although present in the hearing room is not clear. Her testimony as to the condition of claimant's eye immediately following his fall may have an important bearing on the determination of this case. We think she should have been sworn." Notwithstanding this suggestion, the nurse was not called at the subsequent hearing. In its final opinion, the board adverted thereto as follows: "We note that she was not called at the second hearing. So far as the record discloses, she is an employee of the defendant, and no excuse is offered for her failure to testify. It is a legal presumption that a party who withholds testimony bearing on his case does so because its effect would not be beneficial. *Harkins v. Varone,* 306 Pa. 376."

The assignments of error are overruled and judgment affirmed.