## Heyler *v.* J. Sullivan and Sons Manufacturing Corporation, Appellant.

Argued October 13, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH and ROSS, JJ. (ARNOLD and GUNTHER, JJ., absent).

*Paul H. Ferguson,* for appellant.

*David L. Ullman,* for appellee.

OPINION BY ROSS, J., January 20, 1953:

In this workmen's compensation case, the compensation authorities made an award to the claimant, Alice H. Heyler, widow of the employe Robert J. Heyler, and after exceptions by the employer were dismissed by the court below and judgment entered on the award, this appeal was taken by the employer and its insurer.

Heyler was employed by the defendant company on night duty, his hours being from 4 p.m. to 7 a.m., and among his duties was that of tending the boilers and pipes in the employer's plant. On April 2, 1948 he left home for work at 2:30 p.m. and was at that time "perfectly all right". While at work on the afternoon of April 2, 1948, the deceased went to a store near the plant and as he was returning he was observed to fall, for some reason, on the curbing or in the gutter of a street he was crossing. He arose with difficulty, was helped to the plant, and, although he was urged to go home, insisted upon staying. Sometime

later that evening he was found in the plant at the foot of a ladder leading up to certain valves to which it was his duty to attend. He seemed to be in considerable pain around the chest and was not very coherent. He was taken home and the following night collapsed in his bathroom. Thereafter he was removed to the hospital, and ten days after the foregoing events he died of pnuemonia. A post mortem examination revealed that he had three broken ribs.

There is no evidence with respect to Heyler's activities from the time he went to work until about 6 p.m., at which time he was observed walking along a street near the plant by Paul A. Roth. Roth, a witness for defendant, testified that Heyler had his left hand pressed to his left chest as he walked. Roth went on his way but as he reached the corner he "looked back and here Bob [Heyler] stepped off the curb and was sprawled in the street." The witness did not go back to him because he saw that "two men" had already "picked him up". One of the two men who assisted Heyler after his fall was Edward Feilke, a witness for defendant, who testified: ". . . I was watching Bob. He came to the corner and he fell off the street" and "as he slipped off the sidewalk he fell." Feilke testified that decedent's glasses were broken and that he was cut on the forehead.

At 8 p.m. of the same evening John Wixted and George Braun, also employed by the defendant, entered the plant and found Heyler in an injured condition. Wixted testified: "We went to the boiler room and we found Heyler laying on the boiler room floor" in front of "No. 1 boiler". Braun testified that the decedent was lying on the floor "alongside" a ladder which was leaning against the front of the boiler at a 45 degree angle, its feet being three or four feet from the front of the boiler. Heyler's duties as a stationary engineer

required him to go up this ladder to close valves on the boiler. At the time in question the boiler room was being dismantled and the room was "a mess".

Both Braun and Wixted gave testimony concerning the physical condition of the claimant's husband when they found him lying on the boiler room floor. Wixted stated that he was conscious but unable to get up, that he complained of a pain in the chest, "seemed to have difficulty in breathing"; that he complained that "his finger hurt him" and that his face was "skinned . . . and had blood on it, and one of his glasses was broken —one lens of glasses." Wixted asked Heyler what had happened to him and Heyler replied that he didn't know, that he couldn't remember anything "since 7:40 p.m." Braun testified that there was blood on the left side of Heyler's face, that the decedent stated that his finger was broken and demonstrated the truth of that statement by bending the finger "all the way back" against the back of his hand. When Heyler complained of a pain in his side, Braun opened decedent's shirt and found a black and blue mark on his side "on the left, bottom of the first or second rib". Braun testified that Heyler said, " 'If I only could get air, something is pressing me here.' " and stated further that he noticed that the decedent was breathing "very heavy". Braun stated: "I asked Bob what happened; he said: 'I fell.' I asked how did you fall—did you fall off the ladder. He said: 'I fell'."

Heyler was taken to the hospital, where first aid treatment was rendered to him, and then taken to his home. The next morning (Saturday) he went back to the hospital and later returned to his home. About 8 p.m. he got up and went into the bathroom. Claimant stated that she heard a "thumping" and went up to find her husband "lying on the floor like against the bath tub". With the help of a friend she got him

back to bed, he was "very feverish", did not sleep all night and on Sunday went to the hospital where he remained until April 13, the day he died. During that time he was kept in an oxygen tent. The hospital record introduced into evidence by claimant lists the cause of death as "pneumococcal septicemia secondary to bronchopneumonia . . . associated with fracture of left 8th, 9th and 10th ribs". Portal cirrhosis was stated as a contributing cause of death.

The material finding of fact of the compensation authorities and the one that raises the issue in this case is ". . . while the claimant's decedent was in the course of his employment with the defendant, he fell, fracturing the 8th, 9th, and 10th ribs, suffering multiple bruises and contusions leading to septicemia and pneumonia". Appellants contend that there is no substantial competent evidence to support the finding (1) that Heyler was injured in the course of his employment and (2) that there was a causal connection between such injury and Heyler's death.

In determining whether there is such evidence we, of course, follow the well-established principle that since the compensation authorities found in her favor, the evidence must be viewed in the light most favorable to the claimant and she must be given the benefit of every inference reasonably deducible therefrom. *Hockenberry v. State Workmen's Insurance Fund*, 133 Pa. Superior Ct. 249, 2 A. 2d 536; *Harris v. Meyers*, 160 Pa. Superior Ct. 607, 52 A. 2d 375; *Schubert v. Oswald & Hess Co.*, 161 Pa. Superior Ct. 309, 54 A. 2d 113; *Darmopray v. Budd Mfg. Co.*, 169 Pa. Superior Ct. 200, 82 A. 2d 341. With this principle in mind, it is clear that the record in this case contains ample support for the compensation authorities' finding of fact that Heyler sustained an injury in the course of his employment and that such injury caused his death.

This is not a case in which, as appellants argue, the compensation authorities inferred an accident merely from injuries, "the presence of which injuries may all readily be explained as having occurred in the fall in the street two hours or more before his discovery in the plant". When Heyler slipped off the curb and "sprawled" in the street at 6 p.m. he cut his forehead. There is not one shred of evidence to indicate that his injuries were more extensive. When he was discovered in the employer's plant at 8 p.m. he was lying on a floor littered with brick, pipe, grates, brick and boiler frames and lying near the bottom of a ladder which his duties as a stationary engineer required him to climb. At this time his chin was "all scraped", his face was "skinned" and there was blood on the left side of it; he complained of a "terrible pain" in his lower chest and had a black and blue mark on his side; finally, his finger was so badly broken that it could be bent against the back of his hand. Furthermore, when decedent was asked by George Braun if he had fallen from the ladder he answered, "I fell." Appellants would have us believe that the decedent was referring to his earlier slip from curb to street. The circumstances under which the question was asked and the answer given render the appellants' construction illogical. When Heyler fell to the street he was only slightly injured. When the question was put to him by Braun, Heyler was badly hurt and we think there is little question but that he was attempting to explain his then-condition and not a minor cut on the forehead suffered some two hours before.

In *Thomas v. DeCommene*, 133 Pa. Superior Ct. 489, 3 A. 2d 41, cited by appellants, the deceased and his wife were employed by the original defendant as janitors. Part of their compensation was a rent-free apartment in the building in which they worked. The

husband was also employed to perform janitor services for another employer in an adjoining building. It was admitted by the defendant employer that deceased's duties required that he be in that employer's apartment house and ready for work "all the time". On October 6, 1935, at 8:30 a.m., a tenant in the defendant employer's building found decedent sitting on the first step of the ground floor with his head in his hands. Over objection of the defendants and subject to exception, the tenant was permitted to testify that decedent told him that he had fallen the preceding evening in the bath tub in his apartment and that he (decedent) "was very sure he fractured his ribs". The deceased was treated thereafter at a hospital and it was ascertained that he had fractured his ribs. This Court held first, that the tenant's testimony with respect to the conversation with decedent had been improperly admitted. It is clear, therefore, that claimant's only evidence from which an accident in the course of employment could be inferred was extremely limited; there was nothing except that the employe fractured his ribs and that he was found on the employer's premises. In the *Thomas* case there was nothing to show *when* or *where* the employe had been injured. In this case, Heyler was injured between 6 p.m., the time at which Feilke left him at the door of the plant, and 8 p.m., when he was discovered lying on the floor of the boiler room of the plant. That he suffered his injuries on the employer's premises hardly seems open to question in view of the testimony that he was lying helpless on the boiler room floor when found by his fellow employes.

The instant case is similar in some respects to *Laraio v. Penna. Railroad Co.*, 277 Pa. 382, 121 A. 325, in which case the Supreme Court held an award of compensation proper on the following facts: Claim-

ant's husband was employed by the defendant as a janitor for one of its buildings and was required at times to go to other parts of its plant. At the usual hour for returning to work after lunch he reported for duty, dressed for work, and was at his customary place of employment when the whistle blew. Shortly thereafter he was seen going in the direction of another building where he was shown to have gone frequently under directions from his superiors. A few minutes later he was found on the ground outside of and close to the building, directly beneath an open window in a toilet room on the third floor, suffering from injuries which caused his death. There were marks on the window sill which in the words of the Supreme Court "might have been made by decedent in an endeavor to save himself from falling". No one witnessed what occurred.

The probable nature of an accident followed by death for which compensation is claimed may be established by circumstantial evidence alone: *McCauley v. Imperial Woolen Co.*, 261 Pa. 312, 104 A. 617; *Thompson v. Conemaugh Iron Works*, 114 Pa. Superior Ct. 247, 175 A. 45; *Nazarey v. Lehigh Valley Coal Co.*, 131 Pa. Superior Ct. 93, 198 A. 899; *Leichleitner v. Coal Township School District*, 147 Pa. Superior Ct. 276, 24 A. 2d 50. Certainly from the circumstances here, a logical inference from the testimony is that the deceased fell and was injured in the course of his employment.

Appellants' second and final contention that there is in the record no competent evidence of a causal connection between Heyler's injuries and his death is equally without merit. Claimant's medical witness, Dr. Victor A. Digilio, was asked his professional opinion based upon a hypothetical question which in all material particulars was supported by testimony and

which concluded: ". . . If those facts are true, do you have an opinion as to whether the fall that he suffered while at work was a material contributing factor in bringing about his [Heyler's] death on the thirteenth day of April, 1948?" To this question the witness answered: "In my opinion the deceased developed a pneumococcal septicemia as was proved by positive blood culture; that this diseased state was rendered more severe by the accident and that the accident so modified this patient's ability to battle this infection that caused his [demise]."

We think the compensation authorities reached a permissible conclusion based upon the facts before them. In *Murdock v. N. Y. News Bureau*, 263 Pa. 502, 106 A. 788, claimant's husband was employed as a lineman and, while engaged in the course of his employment, came in contact with a wire heavily charged with electricity. He fell from a pole on which he was working and upon striking the ground his knees "doubled up" and came violently in contact with his chest, causing considerable pain during the day and "indicating the fracture of one or more ribs". Whether or not his ribs were broken, the physician who made an examination was unable to determine. The pain in the chest continued, making breathing difficult. After three days Murdock returned to his place of employment but on account of the constant severe pain in his chest did not engage in his usual work and later was obliged to return home and again call a physician, who then diagnosed his trouble as lobar pneumonia, from which he died ten days after the accident. The referee concluded that death was due to lobar pneumonia resulting from a fall. In affirming the award the Supreme Court stated at page 505: "The findings of the referee clearly show the injury to the chest resulted in continuous pain from the time of the acci-

dent until the trouble was diagnosed by the physician as lobar pneumonia, and we find nothing in the record to justify the inference that, between the time of receiving the injury and the development of the disease, there were other causes from which pneumonia might have been contracted. That the physician failed to discover a fractured rib does not detract from the weight to be given the undisputed fact that a blow on the chest was received, followed by continuous pain, resulting a week later in the disease which finally caused death. The nature of the injury and its resultant effects, followed so closely by the development of the disease, constitute sufficient evidence to support the conclusion of the referee . . ."

No one would contend that death by septicemia and pneumonia is the inevitable result of suffering multiple bruises and contusions and fracturing three ribs. Where, as here, however, within three days after sustaining such injuries a man is in a hospital in an oxygen tent suffering from pneumonia which causes his death some eight days later, the "nature of the injury and its resultant effects, followed so closely by the development of the disease, constitute sufficient evidence to support the conclusion of the referee". Where the disability complained of is the natural and probable result of the injuries, the fact-finding body may be permitted to so find, even in the entire absence of expert opinion. *Paul v. Atlantic Refining Co.,* 304 Pa. 360, 156 A. 94; *Mohr v. Desimone & Sayers,* 110 Pa. Superior Ct. 44, 167 A. 504; *Benci v. Vesta Coal Co.,* 131 Pa. Superior Ct. 435, 200 A. 308. It must be observed that the phrase "natural and probable result" as used in these cases has a meaning different from that which it bears when used as a test of foreseeability in a negligence case. Here the compensation authorities may find a causal connection even if the

disease is an unusual result of such injuries. It is necessary only ·that the connection between· injuries and the disease be reasonably apparent when all the facts, including the circumstance that pneumonia *did* develop almost immediately after the accident, are considered.

Judgment affirmed.