Leber *v.* Naftulin (et al., Appellant).

Argued March 22, 1955. Before RHODES, P. J., ROSS, WRIGHT, WOODSIDE, and ERVIN, JJ. (HIRT, and GUNTHER, JJ., absent).

*J. Webster Jones*, for appellant.

*Alexander F. Barbieri*, for appellee.

OPINION BY ROSS, J., July 21, 1955:

In this workmen's compensation case, the employer's insurance carrier has appealed from an award of compensation to the widow of a deceased employe, Harry C. Leber.

Claimant's husband was a paper hanger in the employ of the defendant for some time prior to June 20, 1951. He was in excellent health, and on this day he reported to work as usual and was assigned to repaper one of the walls of a new house. At about 11 a.m. one of his fellow workmen found him sitting in a dazed condition near the foot of a ladder on which he had been working. He was red in the neck and head and had excruciating pain in the back of his head. Another workman was summoned and together they removed him from the hot, unventilated room to the outside steps. A Dr. Nussbaum was called and gave Leber a superficial examination, suggesting that he go to the hospital for a thorough examination and diagnosis. Dr. Nussbaum made no diagnosis and never saw the deceased thereafter. The fellow workmen took Leber home and helped put him to bed. He continuously complained of pain in the back of his head, and his wife (appellee here) examined him and found a lump which was very sensitive to touch. On June 24, 1951 he was removed to a hospital, where he died on July 4 of a subarachnoid hemorrhage.

During the course of the hearing the widow was allowed, over objection, to testify concerning a certain statement which her husband made to her after he was brought home by the workmen. She testified that in response to her inquiry of her husband as to what had happened he answered, "I must have hit my head when I slipped from the ladder." Appellant asserts that this hearsay statement was admitted in error, and since it allegedly is the only evidence of a fall there is no com-

petent evidentiary basis for the finding of an accident, citing *McMahon v. Budd Co.,* 108 Pa. Superior Ct. 235, 164 A. 850, where there was no evidence, circumstantial or otherwise, to support a finding of an accident except hearsay declarations made by the employe. Here, however, the compensation authorities and the court below believed that there was sufficient independent circumstantial evidence of the accident and hence this hearsay, not inconsistent therewith, was relevant and could be considered for whatever additional light it threw upon the matter under the doctrine of *Nesbit v. Vandervort & Curry,* 128 Pa. Superior Ct. 58, 193 A. 393, wherein it is stated at page 62: "While awards in workmen's compensation cases cannot rest wholly on hearsay evidence, . . . the Workmen's Compensation Law, by its very nature, contemplates liberality in the admission of proofs and the inferences reasonably to be drawn therefrom . . . and where the facts are sufficiently established by circumstantial evidence, hearsay testimony, not inconsistent therewith, if relevant and material to the fact in issue . . . may be considered for the additional light, if any, that it throws on the matter."

Our primary concern then is whether there is independent competent evidence of an accident in the nature of a fall from the ladder. There were apparently no eyewitnesses, the evidence being solely circumstantial. Leber was found near the foot of the ladder, sitting against the wall in a daze. He had a lump on the back of his head. There was a strip of wallpaper which had been pasted on the wall near the ceiling, but which was still folded and unattached to the wall at the bottom. There were two tears in the paper. Several other pieces of wallpaper had been cut, pasted and folded, ready to be applied. The referee, the board and the court below all concluded that these circumstances

reasonably lead to the conclusion that Leber slipped and fell from the ladder. Appellant contends that since deceased was found sitting against the wall he did not fall from the ladder but was merely finishing pasting the bottom of the wallpaper when he suffered the brain hemorrhage. What is lacking in that reasoning is that it does not take into consideration the excruciating pain and lump on the back of his head which indicates some bump or blow; the tears in the wallpaper which were probably made when he fell; the strip of wallpaper which was pasted at the ceiling but folded and unpasted at the bottom which indicates that he was still working at the top when the untoward event occurred. His statement to his wife concerning his fall from the ladder was, therefore, corroborative and admissible under the *Nesbit* case, supra. See also, *Lusk v. Monongahela City Water Co.*, 164 Pa. Superior Ct. 354, 64 A. 2d 670. The probable nature of an accident may be shown by circumstantial evidence alone (*Nazarey v. Lehigh Valley Coal Co.*, 131 Pa. Superior Ct. 93, 198 A. 899; *Heyler v. J. Sullivan & Sons Mfg. Corp.*, 172 Pa. Superior Ct. 615, 94 A. 2d 95), and, also, in compensation cases the same exactness of proof is not required as in suits at law. *Carson v. Real Estate-Land T. & T. Co.*, 109 Pa. Superior Ct. 37, 165 A. 677; *Mahoney v. Mulholland Roofing Co.*, 135 Pa. Superior Ct. 498, 5 A. 2d 812.

Appellant also contends that the claimant did not establish a causal connection between the accident and death to the exclusion of natural causes. The medical testimony is conflicting on the causation. Appellant's evidence is to the effect that deceased died of natural causes. Claimant's medical testimony was presented by a Dr. Darnstadter, a specialist in neurology and psychiatry. He was asked, as an expert, a hypothetical question based on the prior testimony. His answer

concerning the cause of death was: "In the first place this man died of subarachnoid hemorrhage. The subarachnoid hemorrhage came on and was initiated either by the fall or immediately before the fall from the ladder. There is evidence that he struck his head in falling, and on that basis, since the primary hemorrhage must have been very slight and the ultimate hemorrhage was sufficient to be fatal, it is a reasonable assumption and I believe that he aggravated the hemorrhage by the blow to the head. Q. You think that thereby caused his death, Doctor? A. Yes. Q. The aggravation by this blow? A. Yes." He then explained: "The man when he fell either had a hemorrhage beginning at that time accounting for his being dazed, but he recovered immediately which assumes that he made a partial immediate recovery so that the headache does not continue, the headache and dazed feeling. Following this though, immediately following the blow to the head, he steadily regresses and his slight opening in the blood vessel—it was a slight opening in the blood vessel—enlarges to the point where it becomes fatal." On cross-examination he admitted he could not say whether the hemorrhage began before or after the fall.

Appellant stresses that this testimony is equivocal in that it does not definitely establish that the hemorrhage was a result of the fall. Its principal reliance is on *Skomra v. Weirton Coal Co.,* 161 Pa. Superior Ct. 70, 53 A. 2d 751, which held that the claimant has the burden of showing which of two causes was responsible for the death if the one cause will excuse the defendant from liability. There the evidence showed that death resulted either from increased blood pressure caused by exertion, inducing a cerebral hemorrhage, i.e., from natural causes, or was caused by a blow to the head in an accident sustained in the course of his employment some 19 days earlier. Under the

former cause the employer would not have been liable. The distinguishing feature here is that the doctor's answer indicates that under either alternative the fall was the cause of death—either the direct cause of the hemorrhage or the aggravating cause.

In *McCarthy v. General Electric Co.*, 293 Pa. 448, 143 A. 116, at pages 451-452, we find: "Furthermore, it is not necessary that the fall result from an accident, as the fall is the accident; nor is it material that the employee fell because he became dizzy or unconscious. An injury sustained by an accidental fall is compensable although the fall resulted from some disease with which the employe was afflicted. In the instant case, McCarthy was not without the protection of the act, if hurt by a fall, although it resulted from a lapse of the brain, whether it was gumma or merely vertigo. An accidental injury, during the course of employment from an unexplained cause is compensable and the burden is not on a claimant to show the exact cause. . . . If resulting from temporary mental lapse it is as compensable as though resulting from the friendly push of a fellow servant, or other untoward event."

And in *Hodgdon v. Kerr Salt Co.*, 176 Pa. Superior Ct. 177, 106 A. 2d 621, the employe suffered a coronary attack while driving his automobile as a salesman for defendant. He collided with another automobile, received a small superficial abrasion on his head, and died. The family physician testified that in his opinion the employe had a heart attack while driving and that the accident and bump occurring immediately thereafter were sufficient shock to cause his death. The defendant employer called an eminent cardiologist who testified that the employe was dead at the time of the collision, relying on the fact that there was no trauma as a result of the accident except the very superficial head injury. The Board, however, believed the

family physician and granted the compensation and we upheld the award. The fact that the heart attack may have preceded and caused the fatal accident did not deny claimant the award.

In the instant case, therefore, it is immaterial whether the fall resulted from the initial hemorrhage and aggravated it, or whether it was the direct cause of the hemorrhage. The important factor is that the death unquestionably resulted from the hemorrhage, which under either alternative proved fatal only because of the blow on the head. In neither case would appellant be relieved of liability and it was thus unnecessary for claimant to show which alternative actually occurred.

There is ample competent evidence, though circumstantial, to support the award. The inferences drawn therefrom were reasonable and within clear logic. That other inferences might have been drawn is immaterial here. So too, the acceptance of claimant's medical testimony rather than the employer's was a matter solely for the trier of fact; it cannot be disturbed now.

While there is ample competent evidence to sustain the award here, we have the same difficulty which was present in *Gavula v. Sims Co.,* 155 Pa. Superior Ct. 206, 214, 38 A. 2d 482. There is no distinct finding of fact concerning the accident which will support the award. It is clear that the referee and Board believed that there was a fall from the ladder, but it is clear by inference only. The only finding of fact in this regard is "2. That on June 20, 1951, the decedent was working for the defendant, when he was found at the bottom of a ladder, on which he was working, in a dazed condition; he was brought home in a dazed condition, and placed in bed, and remarked, 'I must have hit my head when I slipped from the ladder.'" The other findings of fact concern employment and the cal-

30

culation of the award. There is a conclusion of law that there was an accident, but the finding of *fact* is lacking. The "finding" of a fall here is merely an abstract of the testimony, without a distinct indication that the testimony was believed and that a fall occurred. This practice has continuously been disapproved by our courts because of the necessity that specific findings of basic facts be made. See *Stufflet v. Fraternal Order of Eagles*, 164 Pa. Superior Ct. 474, 475, 65 A. 2d 443. Nor was the difficulty cured by the Board in its decision since it made no independent findings of fact, nor did it change or modify the referee's finding regarding the accident. From the Board's decision we can clearly imply that it found that there had been a fall, but we cannot substitute implication for specific findings. *Simon v. Fine*, 167 Pa. Superior Ct. 386, 390, 74 A. 2d 674. Our only choice is to do as we did in the *Gavula* case—remand the case to the Board to clarify its findings.

The order is reversed and the record is ordered remanded to the Board for further consideration and determination consistent with this opinion.