Jessie *v.* Dash, Appellant.

2

Argued September 19, 1960. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ. (GUNTHER, J., absent).

*Richard D. Harburg,* with him *Herbert A. Barton,* and *Swartz, Campbell & Henry,* for appellant.

*Robert E. Lenton,* with him *Sol R. Gitman,* and *Harris I. Weisbrod,* for appellee.

OPINION BY WATKINS, J., November 16, 1960:

This workmen's compensation appeal is from the judgments of the Court of Common Pleas No. 2 of the County of Philadelphia affirming the order of the Workmen's Compensation Board in favor of the claimant, Celia Jessie, widow of William Jessie, deceased.

A review of the facts as found by the referee and affirmed by the board is set forth in the opinion of President Judge CARROLL of the court below, as follows:

"William Jessie, deceased, had been employed by the defendant William Dash, trading as Dash Brothers, for a period of approximately four years as a handy man and laborer. During this period of employment his only absence from work was the consequence of a two-week period some two years prior to the accident for an attack of grippe. He wore glasses but apparently experienced no pain or difficulty with his eyes and from all appearances was in good health. On Monday, November 23, 1953, Jessie returned home from work at about 4:30 P.M., approximately an hour earlier than his usual time. At that time his right eye was

4

swollen, reddish, and tearing. He told his wife that while at work stacking egg crates he had reached down to pick up another crate and the stack of crates had fallen over, striking him in the face and eye and that a piece of one of the crates went into his eye. He then told her that after this he did not feel very well and as it was close to quitting time he decided he would go home. After recounting this incident he bathed his eye with boric acid and laid down. He was unable to sleep that night and in the morning his eye looked worse. However, he went to work that day and continued working the remainder of the week despite the fact that the swelling and inflammation of the eye grew worse each day. Every evening upon his return home from work he complained of severe pain in the eye. On Saturday he returned home from work at Noon time in such pain that he was unable to do anything but lie on his bed and toss. The following morning he was admitted to the Wills Eye Hospital where his condition was diagnosed as severe plastic iridocyclitis, a purulent orbital abscess and cellulitis of the right eye. In addition, it was ascertained that a foreign body was lodged outside the globe but in the orbit of the right eye. After the administration of antibiotics and barbiturates an attempt was made to enucleate the right eye but because of a rupture into the sclera and marked adhesions and necrosis it was possible to perform only evisceration. Accordingly, the anterior globe was removed and the debridement of necrotic tissue was performed. The decedent remained hospitalized until his death eight months later. During this period his condition gradually deteriorated. X-ray studies on his admission and subsequently showed a bi-lateral, active pulmonary tuberculosis and retrobulbar abscess and purulent endophlebitis. On January 20, 1954, he was removed to All Saints Hospital where he remained until June 29. On that day he was removed to the Phila-

delphia Hospital for Contagious Diseases where he died on July 30, 1954. The death certificate stated pulmonary tuberculosis as the primary cause of death and congestive heart failure as a contributing cause."

On April 12, 1954, the decedent filed a claim petition and following his death his widow filed her claim petition. The referee found in favor of the claimant on both claims and the referee's findings were affirmed by the Workmen's Compensation Board.

The appellant contends that the only evidence to support the happening of an accident is the hearsay declarations of the decedent to the claimant on his return from work and that this testimony was improperly admitted by the compensation authorities; that without that testimony there was insufficient evidence to establish an accident in the course of his employment; and that there was insufficient medical testimony to sustain the finding of the board that the decedent's disability and subsequent death resulted from an accidental injury in the course of his employment.

We agree with the court below that there was sufficient competent evidence to support the board's finding of an accident within the scope of his employment. It is true that there is a lack of direct evidence of an accident but if we examine the circumstances of his leaving for work in apparently good health; his record of prior good health; the fact that as he left for work there was no evidence of any irritation or injury to his eye; that on his return home it was at once evident that he had suffered an injury to the eye as it was red, swollen and tearing; that he had left work an hour earlier than usual; that there was not the slightest suggestion that any injury had been received on his way home from work; and that a foreign body was found within the orbit of his eye, all combine to support the inference of an accident suffered in the course of his employment.

This is especially true when the recitation of the circumstances is bolstered by the prompt complaints made by the decedent to the claimant-wife upon his return from work concerning both his injury and the accident that caused it.

It is contended by the appellee that circumstances set forth above, standing alone, are sufficient to support the finding. The probative nature of an accident followed by death, for which compensation is claimed, may be established by circumstantial evidence alone. *Nazarey v. Lehigh Val. Coal Co.*, 131 Pa. Superior Ct. 93, 198 A. 899 (1938) ; *Heyler v. Sullivan & Sons Mfg. Corp.*, 172 Pa. Superior Ct. 615, 94 A. 2d 95 (1953) ; *Leber v. Naftulin*, 179 Pa. Superior Ct. 22, 115 A. 2d 768 (1955). And in compensation cases the same exactness of proof is not required as in suits at common law. The phrase "natural and probable result" as used in compensation cases has a meaning different from which it bears when used as a test of foreseeability in a negligence case. *Mahoney v. F. M. Roofing Co.*, 135 Pa. Superior Ct. 498, 5 A. 2d 812 (1939) ; *Gower v. Mackes*, 184 Pa. Superior Ct. 41, 46, 132 A. 2d 880 (1957).

In the case of *Broad St. Tr. Co. v. Heyl Bros.*, 128 Pa. Superior Ct. 65, 193 A. 397 (1937), the decedent had left his home in good health to go to work. On his return from his employment which required him to roll wooden barrels, his thumb was bleeding from a cut or scratch. His home was about two squares distant from his place of work and there was nothing in the evidence to show that anything unusual had taken place on his trip home. This Court said at page 68, "Leaving out of the case, for the present, consideration of the declarations made by the employee to his daughter, to York, and to Bagdon, the defendant's foreman, as being too remote in time to constitute part of the res gestae, we are of opinion that the circumstan-

tial evidence in the case pointed clearly to the injury to the thumb as having been received while at work at defendant's plant. When he left home to go back to his work, after lunch, the thumb was not injured. His work required the rolling of heavy barrels with iron or wire hoops, which might easily cause a cut or scratch of this nature. He lived only a stone's throw from the plant and on arriving home at the close of work, his hand was still bleeding from a cut or scratch which must have been lately received. There was no evidence tending to show that he had done anything on the way home, after leaving his work, to cause the scratch. The fact finding body has a right to use the conclusions and tests of everyday experience and draw the inferences which reasonable men would thus draw from similar facts: . . ."

The appellee also argues that the declarations made by the decedent to the claimant concerning the injury and the accident are properly admissible into evidence as a part of the res gestae and are sufficient, standing alone, to support the board's finding. We have held that such statements are admissible as "verbal acts", spontaneous utterances of thoughts created by or springing out of the occurrence itself and so soon thereafter as to exclude the presumption that it was the result of premeditation or design. *Broad St. Tr. Co. v. Heyl Bros.*, supra. Or as stated in *Com. v. Stallone*, 281 Pa. 41, 126 A. 56 (1924), "Although the question of time between the occurrence and the declarations is an important one it is not conclusive. Under particular circumstances the res gestae may extend over a considerable period of time and the criterion is whether the declarations are made under such circumstances as will raise a reasonable presumption that they were spontaneous utterances created by the transaction itself and so soon thereafter as to exclude the presumption of premeditation and design." And as

President Judge CARROLL of the court below puts it, "In the instant case there is ample evidence to support the Board's finding that the statement of the decedent was generated by the excitation of the injury received rather than premeditation or design on his part. With this finding we concur. It must be noted that the decedent at the time of his injury was working alone. There were no fellow workers or foreman to whom he might relate the happening of the accident or from whom he might seek aid. Accordingly, he sought the haven of his home and upon his arrival and approximately thirty minutes after the accident for the first time had opportunity to explain what had happened and to seek aid from his wife. In view of these circumstances the delay in time did not destroy his spontaneity of the utterance and the testimony was admissible."

We do not have to rely in this case solely on the circumstantial evidence set forth or solely on the declarations made by the decedent to the claimant but taking them both together, there is ample competent evidence to support the finding of the Workmen's Compensation Board, that this decedent suffered an accident in the course of his employment. As we said in *Nesbit v. Vandervort & Curry,* 128 Pa. Superior Ct. 58, 62, 193 A. 393 (1937), "While awards in workmen's compensation cases cannot rest wholly on hearsay evidence, . . . the Workmen's Compensation Law, by its very nature, contemplates liberality in the admission of proofs and the inferences reasonably to be drawn therefrom . . . and where the facts are sufficiently established by circumstantial evidence, hearsay testimony, not inconsistent therewith, if relevant and material to the fact in issue . . . may be considered for the additional light, if any, that it throws on the matter."

Dr. Solomon S. Brav, a specialist in ophthalmology testified to the causal connection between the lodging

of the foreign body in the diseased eye and the subsequent infection; that in his opinion the entry of the foreign body into the orbit of the eye was a material contributing factor in bringing about the evisceration of the eyeball and the subsequent blindness and the accompanying infection; and that the entry of the foreign body into the eye caused the infection and the enucleation was its direct outcome. Dr. Victor A. Digilio, a specialist in internal medicine testified as follows: "It is, therefore, my opinion that this individual, though having had advanced pulmonary tuberculosis, would have had a good prognosis for immediate recovery and ultimate recovery but that this prognosis was definitely changed to, well, the man died in July, on July 30th, to be exact; and it is my opinion that the death was caused by the chronic infection, giving rise to the stress and strain to an individual fifty-eight years old, who could fight one infection but didn't have enough to fight both infections. . . . In other words, in my opinion this man did not have to die of tuberculosis, certainly not at the time that he did. He could have gone on for years and I am sure he would have." In connection with this testimony the Board said, "The defendant offered no medical testimony to challenge the contention of causal connection between the eye injury and the medical testimony offered in behalf of the claimant. We deem it more than mere coincidence that following the injury in question, the decedent went 'down hill' and his condition deteriorated, finally culminating in his demise. It is significant that after first entering the hospital, less than a week after the accident, he continued as a patient until his death. The infectious process from the eye injury can not be ignored nor minimized as a causative factor."

The findings of fact of the compensation authorities cannot be disturbed unless there is no competent

evidence to support them. *Icenhour v. Freedom Oil Wks. Co.*, 136 Pa. Superior Ct. 318, 7 A. 2d 152 (1939). This rule applies to medical questions with the same force and effect as it does to any other factual issue, for it is not for the courts to attempt to reconcile conflicting medical testimony or to review as a matter of law the credibility of medical witnesses. *Houlihan v. Joseph J. Scheiter & Co.*, 166 Pa. Superior Ct. 85, 70 A. 2d 431 (1950); *Gasior v. Pittsburgh*, 188 Pa. Superior Ct. 371, 146 A. 2d 320 (1958); *Christensen v. Rust Engineering Co.*, 189 Pa. Superior Ct. 88, 149 A. 2d 145 (1959); *Pavlik v. Harmar Coal Co.*, 191 Pa. Superior Ct. 283, 156 A. 2d 565 (1959); *Erwin v. L. & H. Construction Co.*, 192 Pa. Superior Ct. 632, 161 A. 2d 639 (1960).

Judgments affirmed.