## Rich *v*. Philadelphia Abattoir Co. et al., Appellants.

Argued October 2, 1946. Before Baldrige, P. J., Rhodes, Hirt, Reno, Dithrich, Ross and Arnold, JJ.

*Paul Maloney,* with him *Benjamin O. Frick,* for appellants.

*Frank R. Ambler,* for appellee.

Opinion by Rhodes, J., January 17, 1947:

This is a workmen's compensation case in which the widow of a deceased employee filed a claim petition for compensation for herself and her minor child in which she alleged that her husband's death, on February 16, 1941, was caused by an accident on May 1, 1939. An answer was filed in which it was denied that the alleged accident was in any way responsible for the subsequent death. The referee made an award in favor of claimant

which was affirmed by the Workmen's Compensation Board and the court below. Defendant and its insurance carrier have appealed.

The question involved in this appeal may be stated as follows: Is the evidence sufficient to support the finding of the compensation authorities that the death of deceased on February 16, 1941, was the result of the accidental injury sustained on May 1, 1939?

The accident occurred on May 1, 1939, when deceased slipped and fell from a ladder while in the course of his employment. A detachment of the retina of deceased's right eye followed. An award was made on the claim petition which he filed, and compensation was paid by defendants for "the industrial loss of use of his right eye" to the time of his death. Under such circumstances, defendants are estopped from denying the happening of the accident in the course of the employment, and the injury resulting therefrom. Defendants are in no position to question now those basic facts upon which the award was made; no appeal was taken from the award, and the compensation payments were made thereon. Defendants could have further litigated those facts when the opportunity was presented.

We gather from the evidence that claimant relies upon the following sequence of alleged events for the establishment of a causal connection between the accident and deceased's death twenty-two and one-half months later: (1) The pathological condition of the right eye set up sympathetic irritation in the left eye about seven months after the accident; (2) deceased worried about the condition of his left eye and the possibility of the complete loss of vision; (3) the worry accentuated deceased's arteriosclerosis; (4) the arteriosclerosis with such emotional factor precipitated a coronary occlusion; (5) deceased died as a result of the coronary occlusion.

This is the type of case that requires claimant to clearly establish by expert medical testimony causal

connection between the accidental injury and the death of her husband. *Parzuhoski v. Pittsburgh Terminal Coal Corp.,* 140 Pa. Superior Ct. 179, 13 A.2d 879; *Olsweski v. Lehigh Navigation Coal Co.,* 145 Pa. Superior Ct. 193, 20 A. 2d 874; *Bannon v. Pittsburgh,* 145 Pa. Superior Ct. 201, 21 A. 2d 500. There is no obvious causal relationship between the two, and unequivocal medical testimony is necessary to establish the causal connection. *Urbany v. H. C. Frick Coke Co.,* 140 Pa. Superior Ct. 534, 538, 13 A. 2d 905; *Johnson v. Valvoline Oil Co. et al.,* 131 Pa. Superior Ct. 266, 272, 200 A. 224.

Our examination of the record convinces us that the evidence introduced by claimant is insufficient to support an award. Claimant submits that since Dr. Rufus S. Reeves and the impartial medical expert, Dr. Charles C. Wolferth, appointed by the board, both expressed the opinion that there was a causal relationship between the accident and the death, the testimony was sufficient to support the finding of the referee and of the board. Eight medical experts were called as witnesses. Dr. J. Marvin Hanna was the only one who had any opportunity to make observations or tests upon which any sound determination of the cause of death could be based. But the testimony of Dr. Hanna was inadequate to establish that deceased did, in fact, die of a coronary occlusion. On direct examination, he was asked: "Q. You signed the death certificate? A. Yes. Q. What cause, did you ascribe, Doctor— A. (Interposing) My recollection is that I put down coronary occlusion as the cause of death, which was the most logical cause. . . . Q. Doctor, you have given us, I think, three different causes of what might produce this coronary occlusion. Is there any way you could tell which of the three it was, or are they all— A. (Interposing) Why, it is impossible. There was no post mortem done in this case and I don't think anybody would ever know the exact cause of death; but I only gave what I considered the most logical, the most probable cause."

Later, on cross-examination, Dr. Hanna testified: "Q. What did you see then that led you to your diagnosis of coronary occlusion? A. He was dead. Q. Just the fact that he was dead? A. That he had had sudden death, that was all. Rigor mortis was very well established, which has no bearing at all on the cause of death, because anyone would have a rigor mortis following death. Q. The fact that you found him dead in bed led you to believe there was a coronary occlusion? A. Exactly."

It was essential that claimant show beyond a mere guess or conjecture the cause of deceased's death, relying as she does upon a sequence of events to establish a causal connection between the accident and the death. Each step in the alleged chain of causation must be adequately established. The court below, although sustaining the award of the board, recognized that Dr. Hanna concluded that the cause of death was coronary occlusion because it was "the most probable cause"; that Dr. Reeves, in answer to a hypothetical question, assumed the coronary occlusion as the cause of death; and that Dr. Wolferth, believing that there was some basis in fact for each of the necessary assumptions, concluded that there was a relationship between the accident and the death. At least two of the necessary elements or events, in our opinion, have not been established, but are assumptions for which there is no supporting evidence of probative value in the record—(1) that deceased had arteriosclerosis, and (2) that deceased died of coronary occlusion. It is upon the testimony of Dr. Hanna that proof of deceased's death as a result of coronary occlusion must depend. Dr. Hanna's testimony, at the most, represents his opinion that deceased probably died of coronary occlusion; and this falls short of the proof required to sustain claimant's case. See *Monahan v. Seeds & Durham et al.*, 336 Pa. 67, 71, 6 A. 2d 889. In fact, Dr. Hanna admits that the exact cause of death was unknown.

Dr. Reeves assumes that there must have been some arteriosclerosis present, particularly in deceased's heart centers. This is a pure assumption based upon the assumption, as stated by Dr. Reeves, that all who are over forty years of age begin to show some arteriosclerosis. Dr. Reeves also testified that he "assumed that the question of diagnosis of coronary occlusion was a definitely accepted diagnosis in this case."

Dr. Wolferth's conclusion as to causal connection is likewise based upon a series of assumptions. Dr. Wolferth testified: "We do not know from the evidence whether Mr. Rich died from this condition [a coronary occlusion] or from something else, or whether the death was sudden in the sense of being instantaneous. Acute coronary occlusion is far from being the only cause of death which could have occurred under these circumstances." Although he was of the opinion that there was a relationship between the accident and the death, he testified: "Thus, an opinion favoring the relationship between the fall and death has to rest upon a series of assumptions, each one of which has to be valid in order to reach such an opinion."

A causal connection between deceased's injury and his death must be shown by positive expert opinion evidence of such quality and quantity as to amount to more than a probability, conjecture, or guess. *Kennedy v. Holmes Construction Co. et al.*, 147 Pa. Superior Ct. 348, 354, 24 A. 2d 451. There is no other testimony in the record which requires consideration upon the issue before us other than that of Drs. Hanna, Reeves, and Wolferth. The expert opinions relied upon to sustain claimant's claim have no validity in this case, as they are based upon a continuity of events which have not been established. As the evidence was insufficient to support the board's finding, the award cannot be sustained.

Judgment is reversed and directed to be entered for defendants.