## Pavlik *v.* Harmar Coal Company et al., Appellants.

Argued November 12, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

284

*Karl E. Weise,* with him *Hirsch, Truxall & Weise,* for appellants.

*Joseph M. Gaydos,* for appellee.

OPINION BY WATKINS, J., December 17, 1959:

Ethel E. Pavlik, the claimant-appellee, is the widow of Andrew Pavlik, deceased. The decedent was employed by the appellant mining company, Harmar Coal Company, as a bratticeman from 1927 until June 19, 1956, when in the course of his employment, he sustained a serious accidental injury, caused by the fall of a 700 pound rock which crushed his chest. He remained in the hospital until October 10, 1956, and while still totally disabled, died on April 1, 1957. He was paid compensation for total disability to the date of his death. There was no autopsy. His death was certified as being caused probably by acute coronary occlusion.

The referee found as a fact that there was a direct causal connection between the injuries sustained by the decedent on June 19, 1956, and his death on April 1, 1957; that his death was the result of the injuries so sustained and awarded benefits. The Workmen's Compensation Board affirmed the findings of fact and conclusions of law of the referee and, on appeal, the

County Court of Allegheny County dismissed exceptions filed by the appellant company and its insurance carrier, affirmed the findings of fact, the conclusions of law and the award of the Workmen's Compensation Board and entered judgment in favor of the claimant-appellee. This appeal followed.

The record discloses that the decedent worked steadily and was in apparent good health prior to the accident; his injuries were enumerated as a fracture of the seventh and eighth ribs in the left chest and an injured left lung; also a compound fracture of the left oscalosis and a fractured dislocation of the fifth left metatarsal bone; that he suffered a traumatic hemothorax in his left chest; that from a cardiograph taken on June 21, 1956, a diagnosis was made of myocardial damage, possible acute cardiac accident; that two days later the diagnosis on the second cardiogram was "myocardial damage traumatic" and that myocardial infarction could not be ruled out although it was not characteristic and that after his discharge from the hospital the decedent continued to complain of pain in his posterior chest wall.

Dr. Irwin M. Pochapin testified on behalf of the claimant as a specialist in internal medicine. He never saw the decedent but he was supplied with the transcribed testimony, which included the testimony of two other physicians and the following exhibits: A copy of the agreement for compensation; report of case by Dr. J. M. Snyder and Dr. J. F. Lipinski, attending physicians employed by the appellant; copy of personal history of the decedent; copy of the report of a physical examination of the decedent signed by Dr. J. M. Snyder; chart of electrocardiogram; X-ray report of Dr. C. M. Askue; copy of progress report as given by Dr. Snyder and Dr. Lipinski; and copy of certificate of death of Andrew Pavlik.

Dr. Pochapin gave the following testimony:

"Q. Doctor, you said you have read the exhibits and you also read the transcript of testimony, that is, of Dr. Snyder, the widow, the daughter and of a fellow-worker who was present at the time of this accident, and you said you are a member of various medical associations. Are you prepared to express an opinion as to whether or not there is any connection between the decedent's accidental injuries and his subsequent death? A. Yes. I believe there is a direct relationship between the injuries sustained by him in the accident and the sequence of events that transpired from the date of the accident until the date of his death. Q. Will you please elaborate on that—as to how you reached your conclusion that there is a relationship between the accidental injuries and his death? A. It is well accepted by the authorities today that a crushing or perforating wound of the chest may, and frequently does, injure the heart directly leading to either acute congestive failure or to acute myocardial infarction. Such damage to the heart may be slight, or may develop further any time, depending upon the effects of the injury. In this case there were fractured ribs; there was a puncture of the lungs; there was intrapleural bleeding referred to as hemothorax, necessitating the aspiration of 400 cc. of bloody fluid from the left pleural cavity on two occasions. The injury to the chest, as well as the injury to the left heel, to the leg and the knee, produced a sequence of events which were directly responsible for heart damage, and his death, which was certified as being caused probably by acute coronary occlusion. Furthermore, the two electrocardiograms made at the hospital following the accidental injuries were definitely suggestive of myocardial damage. The heart department requested further electrocardiographic tracings. . . . The fact that there was extensive damage orthopedically to the left side of the chest and electrocardiographic evidence of damage to the heart is,

in my opinion, sufficient evidence that the accident was in time directly responsible for the injured individual dying at the time when he did."

This was sufficient competent medical testimony to support the board's findings. "We have never required that the cause of death be established to a medical certainty, as that is practically impossible, or that an autopsy be performed; all that is necessary is that, from a history of the case and the symptoms developed, in the professional opinion of the doctor, the condition caused by the accident contributed to the death of the injured person, though 'such testimony need not be given in any particular words':" *Hunter v. St. Mary's Nat. Gas Co.*, 122 Pa. Superior Ct. 300, 307, 186 A. 325 (1936).

"The credibility of expert witnesses and the weight to be attached to their testimony are matters exclusively for the board and in a conflict of medical opinion, it is for the board to decide which conclusion it will adopt." *Gasior v. Pittsburgh*, 188 Pa. Superior Ct. 371, 374, 146 A. 2d 320 (1958). See also: *Pagliaroli v. Shenango Penn Mold Co.*, 189 Pa. Superior Ct. 496, 501, 151 A. 2d 637 (1959).

The appellant relies strongly on *Rich v. Phila. Abattoir Co.*, 160 Pa. Superior Ct. 200, 50 A. 2d 534 (1947) as authority to support its position. Commissioner Noonan who wrote the opinion for the Workmen's Compensation Board ably distinguishes this case where he states, that the *Rich* case "obviously depicts a situation unlike the one before us, in that, there, following a fall from a ladder, a detachment of the retina of decedent's right eye followed; worry about possible blindness accentuated deceased's arteriosclerosis; the arteriosclerosis precipitated a coronary occlusion; deceased died as a result of the coronary occlusion 22½ months following the accidental fall. The Superior Court held that the expert opinions relied upon by

claimant had no validity as they were based upon a continuity of events which had not been established. In the Rich case the award was not sustained since it was based upon a possibility or a conjecture.

"In the instant case we have an admitted accident resulting in very serious injury for which total disability was paid from the time of injury to date of death approximately 9½ months thereafter. The decedent was under the care of the defendants' doctors during the entire period. . . . The brief perfunctory statement of opinion by Dr. Kopelman, the hospital radiologist, in his interpretation of the cardiograms (taken by hospital technicians) is far less persuasive than the opinion of Dr. Pochapin, the cardiologist, who carefully details his reasons underlying his positive opinion of a definite causal connection between deceased's injury and his death."

We agree with Judge BROSKY who wrote the opinion for the County Court, LENCHER, P. J., LEGNARD and BROSKY, JJ. sitting, that: "Under the guiding principles enunciated by the appellate Courts we will not find facts, nor will we substitute our judgment for that of the Board. It appears from a reading of the portion of the records submitted herein and on the basis of the record taken in its entirety that claimant has carried the burden of proof and has established by clear weight and preponderance of evidence that a causal connection between the injury and decedent's death was clearly established."

Judgment affirmed.