**Karkalas v. Martin**

C.P. of Chester County, No. 2012-11560

*Mark S. Halpern*, for plaintiff.
*Joseph P. Vassalotti*, for defendants.

TUNNELL, *J.*, June 16, 2015—

## ORDER

AND NOW, this 16th day of June, 2015, upon consideration of the motion in limine of defendants William Martin and Graebers Lumber Company to preclude plaintiff's experts from testifying at trial, it is hereby ORDERED and DECREED that said motion is GRANTED for the reasons set forth below and, as a consequence, Joseph Bavaria, M.D., Arunan Sivalingam, M.D., Robert C. Kleiner, M.D. and Lawrence A. Kerson,

M.D. will not be permitted to give their respective opinions concerning causation between the alleged negligence and the injuries claimed.[1]

---

**1. Background**

This lawsuit stems from a motor vehicle accident that occurred on November 18, 2010. In his Complaint, plaintiff alleges that he suffered injury when defendant Martin negligently operated his truck so as to cause it to collide with plaintiff's car. Plaintiff alleges that, as a result of the accident, he sustained severe personal injuries and permanent damage. (Compl., at ¶¶33, 35.)

Plaintiff filed a claim for negligence and seeks punitive damages against William Martin, as the driver of the truck, and Graebers Lumber as the employer of Mr. Martin. (*Id.*, ¶¶32, 33.)

Plaintiff testified at his deposition that the accident occurred at approximately 10:00 a.m. on November 18, 2010. (Defs.' Mot. S.J., at Ex. G., pp. 24:103; 83:1-3.) On that date, he was driving to his office (*Id.*, at 84: 4-6) and the weather and road conditions were dry, bright and sunny. (*Id.*, at 91: 20-25.) He testified that the accident occurred at the intersection of Valley Park Road and Route 23 in Chester County. (*Id.*, at 91: 11-14.) He was traveling eastbound on Route 23 and testified that there were no vehicles in front of him and that nothing obstructed his view. (*Id.*, at 93: 22-25, 96: 15-24.)

Dr. Karkalas testified that he never saw the truck prior to making contact with it and that the truck was not in his lane. (*Id.*, at 94: 4-6.) He testified that while traveling down Route 23 he suddenly felt and heard a collision. (*Id.*, at 97: 20-25.)

Defendant William Martin contends that he was in the process of making a right hand turn prior to occurrence of the accident and was forced to stop his vehicle in the midst of his turn. (*Id.*, at 3.) After his vehicle was at a complete stop, Martin claims Dr. Karkalas drove his vehicle into the rear of Mr. Martin's vehicle.

Plaintiff claims to have suffered the following injuries as a result of the accident:

(a) an aortic valve abnormality and ascending aortic aneurysm requiring aortic valve replacement and aortic reconstruction;

(b) persistent cognitive difficulties, with associated irritability, anxiety and memory loss;

(c) concussion and post-traumatic stress disorder; and

(d) severe vision disturbances and posterior vitreous detachments requiring surgery to restore vision in both eyes.

(Compl., at ¶¶22, 24, 27.)

**Discovery of Expert Witnesses**

Under an Administrative Order dated November 15, 2013, plaintiff was to serve defendants with all expert reports by June 30, 2014. On April 30, 2014, defendants propounded Interrogatories and Request for Production of Documents upon plaintiff. In defendants' Interrogatory Request No. 13, plaintiff was asked to identify any expert witnesses:

"13. State the name and address of each person whom you expect to call as an expert witness at trial, and state the subject matter on which the expert is expected to testify . . ."

Under a Joint Stipulation dated May 2, 2014, plaintiff was to serve all expert reports by August 20, 2014.

On September 26, 2014, plaintiff responded to defendants' inquiry of expert witnesses as follows:

"13. Objection. Plaintiff objects to this interrogatory to the extent that discovery is ongoing and Plaintiff has yet to determine which experts will be retained on his behalf. Plaintiff specifically reserves the right to supplement this response at a time closer to trial and in accordance with applicable rules."

Pursuant to a Second Joint Stipulation dated November 3, 2014, plaintiff's expert reports were due by February 16, 2015.

This case is now at the eve of trial. As of this date, in June 2015, plaintiff has not produced any expert reports as such. Instead, plaintiff has produced reports of four (4) of plaintiff's treating physicians and states that he intends to call them to "testify at trial as to Dr. Karkalas' injuries and causation." (Plf.'s Resp. to Defs.' Mot. S.J., last paragraph.) Defendants have challenged this tactic by way of a Motion in Limine and also a Motion for Summary Judgment.

**Analysis**

In Pennsylvania, a motion in limine is the proper procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before evidence has been offered. *Yacoub v. Lehigh Valley Medical Assocs., P.C.*, 805 A.2d 579 (Pa. Super. 2002). The admission of evidence, including expert testimony, is a matter largely within the discretion of the trial judge. *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003). The decision of the trial court will not be disturbed without a clear abuse of discretion or a clear error. *See Mitchell v. Randall*, 368 Pa. Super. 421, 427, 534 A.2d 508, 510 (1987).

The mere showing that evidence is relevant is not, in itself, sufficient to show admissibility. *Lewis v. Mellor*, 259 Pa. Super. 509, 393 A.2d 941 (1978). Irrelevant evidence is to be excluded if its probative value is substantially outweighed by danger, unfair prejudice or confusion. *Whistler Sportswear, Inc. v. Rullo*, 259 Pa. Super. 230, 433 A.2d 40 (1981).

Plaintiff has the burden of proving all damage claims. *Griffin v. Tedesco*, 355 Pa. Super. 475, 513 A.2d 1020 (1986). In order for proposed damage testimony to be relevant, it is incumbent upon the plaintiff to provide, by competent medical testimony, a causal link between the alleged negligence and damages claimed. *Metz v. Quaker Highlands, Inc.*, 714 A.2d 447 (Pa. Super. 1998).

If the court learns, during the course of trial, that damages claimed are not supported by the evidence, the defendant can be severely prejudiced by presentation of irrelevant testimony, so such matters are best addressed pre-trial. *See Smith v. Celotex Corp.*, 387 Pa. Super. 340, 564 A.2d 209 (1989) (holding that it is reversible error not to direct a verdict

in favor of defendant on an issue of lost wages where evidence was insufficient to allow the issue to go to a jury).

## Rules Governing Expert Witnesses and Testimony

Pennsylvania Rule of Civil Procedure 4003.5 and related case law requires parties utilizing expert witnesses (and requested in interrogatories) "to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Pa. R.C.P. 4003.5(a)(1)(b). Thus, parties must disclose expert opinions prior to trial by providing detailed and specific reports signed by the experts. These reports must contain a significant degree of specificity. *See Walsh v Kubiak*, 443 Pa. Super. 284, 661 A.2d 416 (1995); *Wilkes-Barre Iron & Wire Works, Inc. v. Pargas of Wilkes-Barre, Inc.*, 348 Pa. Super. 285, 502 A.2d 210 (1985).

The purpose of the rule is to "reveal fully the facts and opinions of the experts or his grounds therefore" and to prevent unfair surprise to the opposing party. *See* Explanatory Note to Pa. R.C.P. 4003.5. Expert opinions must be stated with a reasonable degree of scientific or medical certainty. *See* Pa. R.E. 702.

Further, Pennsylvania Rule of Civil Procedure 4003.5(c) limits proposed expert testimony to that which is contained within the expert report of answers to expert interrogatories that are prepared and produced by plaintiff. The rule states:

> To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, the direct testimony of the expert at trial may not be inconsistent or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto.

Pa. R..C.P. 4003.5(c); *see also, Brady v. Ballay, Thorton, Maloney Med. Assocs., Inc.*, 704 A.2d 1076 (Pa. Super, 1997); *Walsh v. Kubiak, supra.*

Rule 4003.5 clearly provides that an expert cannot testify at trial about matters that are not contained within the four corners of his report. *See* Pa. R.C.P. 4003.5(c). An expert cannot, on the witness stand, testify to or offer an opinion on new matters excluded from his report or any untimely produced supplemental report. To allow experts to testify to matters not contained within their reports would be in violation of the Pennsylvania Rules of Civil Procedure and would severely prejudice defendants by permitting an expert to testify on liability and causation issues regarding defendants where none previously existed.

## Plaintiff's Proposed Expert Testimony

In his responses to Defendants' Motions in Limine and Summary Judgment, plaintiff points to the following portions of his treating physicians' reports as his proffered opinions on causation.

Dr. Karkalas treated with Joseph Bavaria, M.D., Director of the

Thoracic Aortic Surgery Program at the Hospital of the University of Pennsylvania, for severe aortic regurgitation with heart failure. Dr. Karkalas underwent aortic valve replacement and aortic reconstruction in June 2011, seven (7) months post-accident. On annual review, in a letter dated September 18, 2012, under headline "Impression/Plan," Dr. Bavaria wrote:

It has been noted that the patient had a traumatic deceleration 6 months prior to surgery reconstruction of the ascending aorta. It was also 2 months prior to rapid development of heart failure *most probable secondary to valvular dysfunction.* We know that the ascending aorta is the second most common site for intimal disruption after deceleration trauma.

Intimal tears are associated with dilated ascending aorta and subsequent development of aortic regurgitation. If the AI is severe enough, then a dilated cardiomyopathy becomes evident. While it is impossible to fully ascertain why this series of conditions developed, *it is certain that there is a significant relationship to his deceleration trauma* (emphasis added).

(Pl.'s Resp. to Mot. In Limine, at Ex. A.)

With reference to his posterior vitreous detachments requiring surgery to restore vision to both eyes, the report of Dr. Arunan Sivalingam, plaintiff's eye surgeon, dated October 10, 2012, states:

Dr. Karkalas has been followed here for pars plana vitrectomy for posterior vitreous detachment and significant floaters. Originally, he had a deceleration injury related to a car accident and he had dissected aortic aneurism and sometime after that he has also developed significant floaters . . . based on my impression and for him to undergo the pars plana vitrectomy for significant floaters, *probably the deceleration injury had something to do with the premature precipitation of posterior vitreous detachment* (emphasis added).

(*Id.,* at Ex. B.)

Dr. Robert C. Kleiner, in his report dated March 20, 2012, summarized his examination of Dr. Karkalas as follows:

As you know [Dr. Karkalas] was involved in a serious automobile accident 1 1/2 years ago. *Immediately following the accident, he noted a marked increase in floaters in both eyes . . .* They are quite large and seemed to interfere significantly with his vision and lifestyle.

I told him that, unfortunately, the only way to relieve his visual symptoms would be to perform vitrectomy surgery and that we usually try to discourage vitrectomy surgery just to relieve vitreous floaters. However, he seems to be very bothered by his symptoms and they do seem to interfere with his lifestyle significantly (emphasis added).

(*Id.,* at Ex. C.)

Dr. Karkalas also complained of persistent cognitive difficulties with associated irritability, anxiety and memory loss. He treated with Lawrence A. Kerson, M.D., a neurologist. Dr. Kerson diagnosed him with concussion and post-traumatic stress disorder. Dr. Lawrence A. Kerson's report dated December 20, 2010, under "Neurological

Evaluation," notes:

> Dr. Karkalas . . . was involved in an automobile accident on November 18, 2010 in which I-beams protruding from a flatbed truck in front of him sheared the top of his car and even took off the passenger side front headrest . . . At the time of impact, he was stunned but did not lose consciousness. He describes 5 or 6 minutes of being "in shock."

Dr. Kerson continues under "Assessments":

> 1. Post Concussion Syndrome . . . (Primary) The clear combination of symptoms after an accident without clear loss of consciousness but with a significant acceleration deceleration component *likely reflects* post concussion syndrome, without loss of consciousness. The differential diagnosis includes post traumatic stress disorder, *given* the terrifying quality of the accident (emphasis added).

(*Id.*, at Ex. D.)

### Form and Certainty of Expert Opinion

Pennsylvania case law is clear that in a personal injury case when there is no obvious causal relationship between the accident and the injury, unequivocal medical testimony is necessary to establish the causal connection. *Smith v. German*, 434 Pa. 47, 253 A.2d 107 (1969); *Florig v. Sears, Roebuck & Co.*, 388 Pa. 419, 130 A.2d 445 (1957); *Washko v. Ruckno, Inc.*, 180 Pa. Super. 606, 121 A.2d 456 (1956); *Rich v. Phila. Abattoir Co.*, 160 Pa. Super. 200, 50 A.2d 534 (1947). Medical testimony was required to establish a causal connection between alleged overexertion and death from a heart attack. *Washko*, 180 Pa. Super. at 609, 121 A.2d at 456-57. Similarly, medical testimony was held necessary when plaintiff contended that pneumonia resulted from a cut in his arm two months previously. *Anderson v. Baxter*, 285 Pa. 443, 132 A. 358 (1926). Expert testimony is not required when the injury is so immediately and directly, or naturally and probably, the result of the accident that the connection between them does not depend solely on the testimony of expert witness. *Tabuteau v. London G. & A. Co., Ltd.*, 351 Pa. 183, 40 A.2d 396 (1945).

Expert testimony is clearly necessary in this case and plaintiff does not deny it.

"When a party must prove causation through expert testimony, the expert must testify with reasonable certainty that in his professional opinion, the result in question did come from the cause alleged." *Cohen v. Albert Einstein Med. Ctr.*, 450 Pa. Super. 392, 399, 592 A.2d 720, 723 (1991). An expert witness is not permitted to guess or offer an opinion based on mere conjecture no matter how skilled the witness may be. *Collins v. Hand*, 431 Pa. 378, 390, 246 A.2d 398, 404 (1968).

In determining whether the expert's opinion is rendered to the requisite degree of certainty, the court examines the expert's testimony in its entirety. *Carrozza v. Greenbaum, Md., et al.*, 866 A.2d 369, 379 (Pa. Super. 2004) (citation omitted). "That an expert may have used

less definite language dos not render his entire opinion speculative if at some time during his testimony he expressed his opinion with reasonable certainty." *Id.* (citation omitted). Accordingly, an expert's opinion will not be deemed deficient merely because he or she failed to expressly use the specific words, "reasonable degree of medical certainty." *See Cmwlth. v. Spotz*, 562 Pa. 498, 537, 756 A.2d 1139, 1160 (2000) (indicating that "[i]n this jurisdiction, experts are not required to use 'magic words'" but, rather, "this Court must look to the substance of [the expert's] testimony to determine whether his opinions were based on a reasonable degree of medical certainty rather than upon mere speculation.")

Nevertheless, "[a]n expert fails this standard of certainty if he testifies 'that the alleged cause 'possibly,' or 'could have' led to the result, that it 'could very properly account' for the result, or even that it was 'very highly probable' that it caused the result." *Eaddy v. Hamaty*, 694 A.2d 639, 642 (Pa. Super. 1997) (citations omitted), *see also, Corrado v. Thomas Jefferson Univ. Hosp.*, 790 A.2d 1022, 1031 (Pa. Super. 2001) (finding expert opinion that defendant "more likely than not" deviated from standard of care insufficiently certain).

With these principles in mind, this court will not permit Dr. Sivalingam to testify, consistent with his report that "probably" the deceleration injury "had something to do with" the premature precipitation of posterior vitreous detachment.

Dr. Kleiner states that the patient noted a marked increase in floaters in both eyes "immediately following" the accident. This is but a temporal connection at best, not an expert opinion on causation, and it is just a repetition of what the patient said. He will not be permitted to so testify.

Dr. Kerson's opinion, as proffered by the plaintiff, that the combination of symptoms after the accident "likely reflects" post-concussive syndrome, does not come close to the required certainty. He will not be permitted to testify at trial consistent with such opinion.

Finally, Dr. Bavaria's letter wherein he employs the phrases "it is certain" that there is "a significant relationship" to plaintiff's deceleration trauma almost resembles an expert opinion on causation. The court has given this phrase the most thought. However, ultimately, it is unknown what "a significant" relationship between the symptoms and the trauma means. The court could guess, but it would mean that a jury would also have to guess. The court simply does not know what is meant by "a significant relationship." The court has searched in vain for precedent interpreting such words in this context. It concludes that if the phrase "very highly probable that it caused the result," has been ruled to be insufficient as an expression of causation, *Albert v. Alter*, 252 Pa. Super. 203, 381 A.2d 459, 470 (1977) (citations omitted), then this formulation fails as well. The court cannot permit Dr. Bavaria to opine in this fashion to the jury.

It is incumbent upon the plaintiff to provide by competent medical testimony a causal link between the alleged negligence and the injuries claimed. *Metz, supra.* Plaintiff has not done so.